688 P.2d 1001

Eric Kurt OSHRIN, Petitioner,

v.

The Honorable Rufus C. COULTER, Jr.,
Judge of the Maricopa County
Superior Court, Respondent,

and

The STATE of Arizona, Respondent and
Real Party in Interest.

No. 17535-SA.

Supreme Court of Arizona,
In Banc.

Oct. 2, 1984.

Ronald B. Fineberg, Barry L. Brody, Phoenix, for petitioner.

Thomas E. Collins, Maricopa County Atty., by Joel M. Glynn and Patricia Scott, Deputy County Attys., Phoenix, for respondent/real party in interest.

CAMERON, Justice.

The petitioner, Eric Kurt Oshrin, was charged with violating A.R.S. § 28–692(A), driving a motor vehicle while under the influence of intoxicating liquor (DWI), and A.R.S. § 28–692(B), driving a vehicle while there was 0.10 per cent or more by weight of alcohol in his blood. The charges were felony charges pursuant to A.R.S. § 28–692.02 because the petitioner was driving with a suspended license. The petitioner moved to dismiss based upon the alleged inadmissibility of evidence of a breath test taken pursuant to A.R.S. § 28–692.03, but the respondent judge denied the motion. The petitioner brought this special action from that denial. We have jurisdiction pursuant to Ariz. Const. Art. 6, § 5(3) and Rule 8, Arizona Rules for Special Actions, 17A A.R.S.

The issue we must resolve is:

Did the trial court abuse its discretion in refusing to suppress evidence of a breath test for alcohol content because the sample the petitioner requested for himself was destroyed after the petitioner was told the charges against him had been scratched or dismissed but before the formal charges against the petitioner were filed?

The facts necessary for a determination of this matter are as follow. The petitioner was arrested on 28 March 1983 and taken to the Maricopa County Jail. At the jail he voluntarily submitted to a gas chromatograph intoximeter (GCI) breath sample test to determine his blood alcohol content. He requested that a second sample be preserved for his own future use pursuant to *Baca v. Smith*, 124 Ariz. 353, 356, 604 P.2d 617, 620 (1979). Such sample was taken by the officers. The petitioner was told his bail would be $260, which amount he had in his possession at the time of his arrest. He was released from custody after approximately eight hours. All money was returned to him and he was told that the charges against him were dismissed or "scratched." Petitioner made no effort to have his sample examined and the sample taken was destroyed on 4 May.

On 25 July 1983, some four months after arrest and release and over two months after the sample was destroyed, felony DWI charges were filed against the petitioner. He was not arrested, however, until 24 December 1983. Trial was set for 6 March 1984 but on 27 February 1984 he moved to suppress the evidence and dismiss the charges because his Baca sample had been destroyed and he had therefore lost his opportunity to gather exculpatory evidence from that sample. The petitioner claimed he reasonably believed the charges were dropped and did not know the state could and would refile the charges, and so he saw no reason to collect the Baca sample before it was destroyed. The state concedes the charges were dropped, but insists dropping the charges is the usual procedure because of the time required in obtaining a formal felony DWI complaint. The respondent judge denied the motion. The petitioner then brought this petition for special action, which we granted because there is no plain, adequate, and speedy remedy at law and because petitioner raises a question of statewide importance.

In *Baca*, supra, the petitioner was arrested for DWI and took a GCI breath test, the same as here. A sample for his own use was not taken. We held that:

the right to test incriminating evidence where the evidence is completely destroyed by testing becomes all the more important because the defense has little or no recourse to alternate scientific means of contesting the test results, and, therefore, when requested, the police must take and preserve a separate sample for the suspect by means of a field collection unit.

*Id.* at 356, 604 P.2d at 620. The testimony in *Baca* indicated that a GCI sample would begin to deteriorate after about five days. We held under the facts in that case that the police must retain the requested sample for seven days, after which the sample could be destroyed if the defendant had not claimed it, and that the defendant should be notified of that fact.[1]

In the instant case, the officers told the defendant that the charges were dropped and the petitioner was free to go, but failed to inform him that charges could and most likely would be filed later. The petitioner was thus led to believe that no further action would be taken against him and he did not attempt to obtain the sample for analysis or have other tests taken upon his release. A person in custody, upon being released under these circumstances, can reasonably be expected to rely upon the statement that the charges are dropped or scratched and assume that no further action will be taken by the state. It is not then unreasonable to fail to take the sample for testing. By the time formal charges are filed, the sample is destroyed and it is impossible to test the reliability of the first sample with the second sample. We find this a violation of fundamental fairness raising a question of denial of due process contrary to the Fourteenth Amendment to the United States Constitution. *See Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Scales v. City Court of Mesa,* 122 Ariz. 231, 594 P.2d 97 (1979). As Judge Henry Stevens of the Arizona Court of Appeals has noted:

There is probably no more nebulous and indefinable concept in the law than "due process of law". Generally speaking, the denial of due process is a denial of "fundamental fairness, shocking to the universal sense of justice". *Kinsella v. United States ex rel. Singleton,* 361 U.S. 234, 80 S.Ct. 297, 4 L.Ed.2d 268 (1960).

*Crouch v. Justice of Peace Court of Sixth Precinct,* 7 Ariz.App. 460, 465–66, 440 P.2d 1000, 1005–06 (1968). To tell a defendant that his case is dismissed, return the amount of his bond, release him from custody, then destroy evidence of guilt or innocence before filing a formal complaint is a denial of fundamental fairness shocking to a sense of justice and a denial of due process. *Brady,* supra; *Scales,* supra; *Baca,* supra. The trial court erred in failing to suppress the results of the breathalizer test.

The state, however, points to our statement in *Scales* which reads:

[W]here material evidence has been lost or destroyed we will reverse a conviction if (1) bad faith or connivance on the part of the state can be shown, or (2) the defendant is prejudiced by the loss or destruction of such evidence.

*Scales,* supra, 122 Ariz. at 234, 594 P.2d at 100 (citations omitted). The state contends that since the petitioner's blood alcohol level was tested at 0.26 per cent, the chance of the destroyed evidence being exculpatory is minimal. The state suggests that an instruction in accordance with *State v. Willits,* 96 Ariz. 184, 393 P.2d 274 (1964), would cure any harm the petitioner may suffer because the second sample was de-

---

1. In the instant case, it is alleged that the police have determined that GCI samples may be stored for up to ninety days, and evidently the present procedure is to do so. The research in that matter, however, was not completed in time to aid the petitioner, and so we do not consider that fact here. We would note, however, that the rationale of *Baca* is that the sample must be retained for the period of the "shelf life" of the sample. It would follow that if the "shelf life" is ninety days, the sample must be held for ninety days before destruction.

stroyed. *See State v. Perez*, 141 Ariz. 459, 464, 687 P.2d 1214, 1219 (1984). We disagree.

■■■ The fact that the defendant is "probably guilty" does not excuse lack of due process where there is conduct rising to the level of bad faith or connivance on the part of the state. Although we might, under the circumstances, find that the petitioner has not been prejudiced by the loss or destruction of the sample, we cannot say the conduct of the police in misleading the petitioner did not reach the level of bad faith or connivance.

The state points out further, however, that the recent United States Supreme Court case of *California v. Trombetta*, — U.S. ——, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984) held that the due process clause of the Fourteenth Amendment does not require that officers preserve breath samples in order to use the test results at trial. In that decision, the United States Supreme Court held that because of the procedures followed to ensure the accuracy of the test results:

> [i]n all but a tiny fraction of cases, preserved breath samples would simply confirm the Intoxilyzer's determination that the defendant had a high level of blood-alcohol concentration at the time of the test. Once the Intoxilyzer indicated that respondents were legally drunk, breath samples were much more likely to provide inculpatory than exculpatory evidence.

*Id.* at ——, 104 S.Ct. at 2534, 81 L.Ed.2d at 422.

We believe there are three important differences in *Trombetta* that distinguish it from the facts in the instant case. First, the court in *Trombetta* was considering a different type of test, an intoxilyzer. As the court stated in its opinion:

> The Omicron Intoxilyzer ("Intoxilyzer") is a device used in California to measure the concentration of alcohol in the blood of motorists suspected of driving while under the influence of intoxicating liquor. The Intoxilyzer analyzes the suspect's breath. To operate the device, law enforcement officers follow these procedures:
>
> "Prior to any test, the device is purged by pumping clean air through it until readings of 0.00 are obtained. The breath test requires a sample of 'alveolor' (deep lung) air; to assure that such a sample is obtained, the subject is required to blow air into the intoxilyzer at a constant pressure for a period of several seconds. A breath sample is captured in the intoxilyzer's chamber and infrared light is used to sense the alcohol level. Two samples are taken, and the result of each is indicated on a printout card. The two tests must register within 0.02 of each other in order to be admissible in court. After each test, the chamber is purged with clean air and then checked for a reading of zero alcohol. The machine is calibrated weekly, and the calibration results, as well as a portion of the calibration samples, are available to the defendant." *People v. Trombetta*, 142 Cal. App.3d 138, 141–142, 190 Cal.Rptr. 319, 321 (1983) (citations omitted).

*Id.* at ——, 104 S.Ct. at 2530, 81 L.Ed.2d at 417. Even though there was no sample preserved, it would appear that there were sufficient safeguards to make the results of the test reliable and therefore admissible without preserving a second sample for testing by the accused. Admittedly, a second but different test known as the Intoximeter Field Crimper-Indium Tube Encapsulation Kit, which appears to be similar to the test described in *Baca*, could have been administered which would have resulted in a sample for defendant's later use in determining the accuracy of the first test results. That was not done, however, and the United States Supreme Court said it was not required that such a second sample be obtained.

Second, we believe that there is a significant difference between not obtaining evidence and destroying evidence. Indeed, the United States Supreme Court in *Trombetta* discussed, but did not disapprove, the previous California case of *People v. Hitch*,

12 Cal.3d 641, 527 P.2d 361, 117 Cal.Rptr. 9 (1974) which held that *Brady v. Maryland,* supra, applied to the use of a breathalizer and that the authorities erred in discarding an ampoule that might have been saved for retesting by the defendant. This court in *Scales,* supra, held the same way concerning the use of the breathalizer and the need to preserve the ampoules.

Third, and of more importance in our opinion, under California law, the suspect is given a choice, at state expense, of having his blood alcohol concentration determined by either a blood test, a urine test, or a breath test. Cal.Veh.Code § 13353. In the case of a blood or urine test, samples may be preserved for the defendant. In *Trombetta,* supra, the suspect elected to take a breath test. The petitioner in the instant case had no such option. He either took the GCI (breath) test or no test at all. Had he refused, he would have suffered the consequences of such refusal. A.R.S. §§ 28–691(D), –692(K). We do not believe *Trombetta* applies.

In holding that the due process requirement of *Brady, Scales,* and *Baca* applies to the facts in this case, we note that the state is not without a remedy. Because it is doubtful that many defendants realize the state may refile charges after they are released, and therefore do not recognize the importance of testing their Baca samples before the samples are destroyed, the police should inform defendants being released that the charges, though presently "scratched," may be refiled, and therefore the Baca sample should be tested as soon as practicable. By this procedure, the state could avert any potential future problems of a defendant, such as the petitioner here, claiming he or she did not know the state could refile the charges.

In closing we note with concern the amount of time that elapsed between the petitioner's arrest and release, the time the charges were filed, 25 July 1983, almost four months later, and the petitioner's arrest on 24 December 1983. Trial was not set until 6 March 1984, almost a year after the original arrest and release. If punishment is a deterrent in a criminal case, it must be imposed as near to the offense as reasonably possible. Having arrested a person, the state has the obligation to proceed forthwith to bring formal charges against that person or drop them. Though the procedure followed here does not violate the letter of our speedy trial rule, Rule 8, Arizona Rules of Criminal Procedure, 17 A.R.S., it does violate the spirit of the rule and is a fact we will consider when determining whether a defendant has been denied due process of law.

The matter is remanded to the trial court with directions that the breathalizer test be suppressed and the motion to dismiss as to A.R.S. § 28–692(B), driving with a blood alcohol content of 0.10 per cent, be granted. As to A.R.S. § 28–692(A), driving a motor vehicle while under the influence, the defendant may be tried based upon evidence other than evidence of the breathalizer sample. As to A.R.S. § 28–692(A) then, the denial of the motion to dismiss is affirmed.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and FELDMAN, JJ., concur.