694 P.2d 1209

Brian N. JHAGROO, Plaintiff-Appellee,

v.

CITY OF PHOENIX, MUNICIPAL COURT; The Honorable Eugene K. Mangum, Judge of the City of Phoenix Municipal Court, and Andrew Baumert III, Phoenix City Attorney, Defendants-Appellants.

No. 1 CA–CIV 7524.

Court of Appeals of Arizona, Division 1, Department D.

Nov. 8, 1984.

Reconsideration Denied Dec. 18, 1984.

Review Denied Feb. 13, 1985.

Howard M. Klein, P.C., by Howard M. Klein, Phoenix, for plaintiff-appellee.

Roderick G. McDougall, City Atty. by Aaron J. Carreon-Ainsa, Asst. City Prosecutor, Phoenix, for defendants-appellants.

MEYERSON, Judge.

This is an appeal from a judgment entered by the superior court in a special action brought by Brian N. Jhagroo the defendant in a DWI prosecution. Appellant City of Phoenix challenges the superior court's reversal of a City court order denying Jhagroo's motion to suppress the results of a blood alcohol test performed by a gas chromatograph intoximeter (GCI). We must decide whether the superior court erred in holding that the police department's failure to preserve and make available to Jhagroo a sample of the simulator solution with which the GCI apparatus was calibrated, mandated the granting of Jhagroo's motion to suppress.

Our consideration of this case has been significantly hampered by the City's failure to make appropriate references to the record in the statement of facts contained in its opening brief as required by Rule 13(a)(4), Arizona Rules of Civil Appellate Procedure. As explained in Section III, because of this violation of the appellate rules of procedure, the City is ordered to pay attorney's fees to Jhagroo in the amount of $500.

I. FACTS

The record reveals the following material facts. On October 3, 1981, Jhagroo was charged with driving a motor vehicle while under the influence of intoxicating liquor in violation of A.R.S. § 28–692(A). While he was in custody, Jhagroo's blood alcohol content was tested with a Gas Chromatograph Intoximeter Mark IV, which analyzed a sample of his breath. The test result indicated that his blood alcohol content was .18%. Jhagroo requested that a

second sample of his breath be taken. This was done, and the second sample was claimed by him (or on his behalf) within seven days.

At all times material to this appeal the City owned and operated seven GCI machines. Each was calibrated weekly by a criminologist with the Phoenix Police Department Crime Laboratory. Calibration involves blowing into the GCI a "simulator solution" of distilled water and pure ethyl alcohol which is mixed in such proportions that the vapor it emits exactly matches the breath of a human being whose blood alcohol content is .10%. The simulator solution is prepared each week in 500 ml. batches. This same batch is used to calibrate all seven of the City's GCI machines. Two or three calibration runs are made on each machine each week, and the results of each run are recorded and preserved. Also preserved for each calibration run are the "strip charts" which the machine generates each time it makes a reading. It is undisputed that the simulator solutions used in the calibration runs are routinely discarded each week after use.

Before his trial in City court, Jhagroo requested a sample of the simulator solution used to calibrate the GCI on which the analysis of his breath was made. When the City prosecutor responded that the simulator solution had been routinely destroyed, Jhagroo moved to suppress his breath test reading. The charges against Jhagroo were later dismissed without prejudice. When they were refiled, he renewed his motion to suppress. The simulator solution issue had by that time apparently arisen in other cases pending before the Phoenix City Court, and evidentiary hearings were held both in this case and in other cases. The City Prosecutor and defense counsel stipulated that transcripts of the testimony of certain witnesses in other pending cases could be considered in this matter in addition to testimony presented by the parties. After taking Jhagroo's motion to suppress under advisement, the city court judge denied it concluding that the requirement for the presentation of a second breath sample on demand furnishes all the evidence a defendant needs to confirm or rebut the state's blood alcohol evidence. A special action was then taken.

The superior court judge, in the special action proceedings, reversed, concluding that the simulator solution constituted material evidence to Jhagroo's defense and its destruction deprived him of a fair trial. This appeal followed.

## II. PRESERVING THE SIMULATOR SOLUTION

Previous Arizona decisions have dealt with related issues arising from the use of scientific devices to determine blood alcohol content. In *Scales v. City Court*, 122 Ariz. 231, 594 P.2d 97 (1979), the defendants contended it was a violation of their due process rights to allow introduction of breathalyzer test results where the test ampoules which yielded those results had been routinely destroyed by the police department and were unavailable for inspection and analysis. The supreme court agreed, holding:

> Destruction of the ampoule deprives the defendant of a crucial source of evidence with which to attack the validity of the test reading and hence the presumption. In light of the obvious importance to the petitioner of being able to rebut the presumption of intoxication we hold that destruction of the ampoule was prejudicial to the defense.

122 Ariz. at 234, 594 P.2d at 100.

*Baca v. Smith*, 124 Ariz. 353, 604 P.2d 617 (1979) concerned the gas chromatograph intoximeter, which yields no physical evidence comparable to a breathalyzer ampoule. The *Baca* case presented the supreme court with the question of whether due process required the state to collect and preserve a separate sample of the defendant's breath for use when testing blood alcohol content on the gas chromatograph intoximeter. The court held:

> We conclude after considering these and other cases that the right to test incriminating evidence where the evidence is completely destroyed by testing

becomes all the more important because the defense has little or no recourse to alternate scientific means of contesting the test results, and, therefore, when requested, the police must take and preserve a separate sample for the suspect by means of a field collection unit.

124 Ariz. at 356, 604 P.2d at 620.

■ Central to the holdings in *Scales* and *Baca* is the recognition by the supreme court that the test ampoules (in *Scales*) and separate breath sample (in *Baca*) were "crucial" pieces of evidence, without which the defendant would be unable to effectively challenge the accuracy of the test results offered in evidence against him. We fail to see how the destruction of the simulator solution deprived Jhagroo of "crucial" evidence or placed Jhagroo in a position of being unable to challenge the results of the GCI test.* Thus, we reject Jhagroo's contention that *Scales* and *Baca* require the preservation of "independent, different, and equally valuable means for verifying or challenging" the GCI test.

■ Though the defense expert in this case identified a number of objectively "possible" ways in which the simulator solution might be incorrectly prepared, the vast weight of the evidence established without serious question that none of the posited eventualities were any more than creative speculation. We conclude also that the evidence affirmatively established the simplicity and reliability of the manner in which the simulator solution is prepared, and the virtual certainty that any significant error in its preparation would be immediately identified and corrected. We accordingly conclude that the chances are extremely low that preserved simulator solution samples would have been exculpatory.

■ More important to Jhagroo's due process claim is that comparable if not better evidence with which to test the reliability of the GCI was reasonably available to him. Although Jhagroo lacked access to

the simulator solution used to calibrate the GCI, he did have access to and in fact obtained an independently collected sample of his own breath. As the state's expert testified, the *Baca* sample can be used to produce three separate and additional blood alcohol examinations.

We are aware of the opinion of Jhagroo's expert that the *Baca* sample cannot be used to test the accuracy of the GCI result. We think this opinion is fundamentally flawed, however, because it presupposes that the *Baca* sample would be used to test the accuracy of the result by re-testing it on the very GCI machine whose accuracy is in question. We can certainly understand that this would not constitute a valid test of the machine's accuracy. We fail to grasp, however, why the *Baca* sample cannot be tested on a different device or devices, the accuracy of which Jhagroo can first determine and confirm for himself. This procedure could clearly provide evidence that might impeach the reliability of the GCI results the state sought to introduce at his trial.

## III. ATTORNEY'S FEES

■ As stated above, the City's failure to provide this court with references to the record in the statement of facts materially hampered our ability to review this case. Unnecessary judicial time was spent reviewing the record. Undoubtedly, defense counsel was also forced to do needless work. The Rules of Civil Appellate Procedure require that appropriate references to the record shall be made in the statement of facts. Because the City has committed an unreasonable infraction of these rules we direct the City, pursuant to Rule 25, to pay attorney's fees to Jhagroo in the amount of $500. *See Adams v. Valley National Bank,* 139 Ariz. 340, 678 P.2d 525 (App.1984).

Reversed and remanded.

CORCORAN, P.J., and CONTRERAS, J., concur.

---

* We find nothing in *Oshrin v. Coulter,* 142 Ariz. 109, 688 P.2d 1001 (1984) or *California v. Trombetta,* —— U.S. ——, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984) which would change the result we reach in this case.