708 P.2d 758

**STATE of Arizona, Appellant,**

v.

**Daniel Walter KLEIN, Appellee.**

**No. 1 CA–CR 7819.**

Court of Appeals of Arizona, Division 1, Department B.

May 14, 1985.

Reconsideration Denied July 16, 1985.

Thomas E. Collins, Maricopa County Atty. by Joel M. Glynn, Deputy County Atty., Phoenix, for appellant.

Minne & Sorenson by Roger J. Blake, Peyton Kerr, III, Phoenix, for appellee.

## OPINION

KLEINSCHMIDT, Judge.

Appellee, Daniel Walter Klein, was charged with driving while under the influence while his license was suspended, cancelled, revoked, or refused, a class 5 felony in violation of A.R.S. § 28–692.02. He filed a motion to dismiss, alleging that the refusal to release him from custody on a bond set according to the terms of the master bail schedule was a denial of due process. The master bail schedule is a pre-set list of the amounts of bond required for a variety of offenses. It permits persons arrested for certain offenses to post bond without the need to appear before a judicial officer. Klein argues that the refusal to release him expeditiously prevented him from securing a test to determine his blood alcohol level.

The trial court held a hearing on the motion to dismiss to determine the facts and stated its findings, in relevant part, as follows:

> Defendant's Motion to Dismiss based on the failure to permit him to make bail is granted, and this cause is dismissed without prejudice as to any other charges which do not involve the physical condition or state of defendant while driving.
>
> . . . .
>
> The Court finds:
>
> The defendant was arrested at approximately 2:00 a.m.; he sought to make bail and has sufficient resources available through his mother whom he contacted by telephone to post a reasonable bond (up to $5,000) immediately; that there was no posted bond schedule with the jail, and the defendant and his mother were advised that there was no way that he was going to get out of jail prior to his initial appearance because he was charged with a felony; that there were court initial appearances at 2:00 a.m., 5:30 a.m., and 9:00 a.m., but the defendant was not taken for his initial appearance until 2:00 p.m., at which time he was released OR, and that he was ultimately released from custody at 4:00 p.m.; that both the defendant and the arresting officer testified that they had a discussion about the defendant's taking his own independent blood test; the officer testified that he advised the defend-

ant that he could make his own arrangements by calling a doctor or have someone bring a doctor to the jail; the defendant testified that he told the officer that he wanted to get out to have a blood test but that he was not advised that he could have the doctor come to the jail. The Court finds that the defendant intended to arrange for an independent blood test had he been permitted to make the bail after his arrest.

The charge against the defendant involved his physical condition or state which was subject to change with the passage of time to the extent that the evidence of his physical condition would be lost unless preserved within a relatively brief period of time.

The offense for which the defendant was charged is bondable under Article 2, Section 22, of the Arizona Constitution.

The offense for which the defendant was charged is a traffic violation under Article 28 of the Revised Statutes and did not involve the death of any person, pursuant to § 24–424 [sic], the police justices are required to prepare a schedule of traffic violations NOT INVOLVING THE DEATH OF A PERSON, listing specific bail for each violation, and that during the hours when the court is not open, that deputy designated by the police justice should set the amount of the bond in accordance with the schedule prepared by the police justice.

That under § 13–3967, the justice of the peace is a judicial officer who is authorized pursuant to Rule 4.2 to determine the conditions of release of the defendant in accordance with Rule 7.2 of the Rules of Criminal Procedure prior to the time the defendant is remanded to the Superior Court where no bond had been set by a Superior Court; that in practice, justices of the peace set bonds on felony cases bondable prior to remand to the Superior Court although a bond is not usually established at the time of arrest unless the arrest of the defendant is by warrant.

That the failure to permit the defendant to make bond after his arrest denied him the right to obtain at his own expenses a blood or other scientific test for the purpose of attempting to establish his sobriety and deprived him of due process of law. That further, the defendant was deprived of his constitutional right to bail as implemented by Section 22–424 ARS for traffic offenses.

The state timely appealed this ruling.

The facts necessary to understand the issue, in addition to those recited by the trial court, are as follows: Officer Timothy Griffith stopped appellee on July 12, 1983, at 1:22 a.m., for speeding. He concluded that appellee was driving under the influence of alcohol and arrested him on that charge. Before leaving the scene of the stop, Griffith learned that appellee's license had been revoked and advised him that the charge would be a felony. Arizona Revised Statutes § 28–692.02 makes it a class 5 felony for one whose license has been suspended, revoked, or refused, to drive while under the influence.

Klein was taken to a police substation and Griffith advised the jailer, Officer Thomas Gilchrist, that the charge was driving while intoxicated on a revoked license, a felony. At the station, Officer Griffith asked Klein if he would take a breath test and Klein refused. Klein told Griffith that he wanted to talk to an attorney, but, when allowed a phone call, he instead tried to call a bondsman. Unsuccessful, he called his mother.

Officer Griffith had told defendant there was no pre-set master bond schedule for the felony charge. Griffith testified that on a charge of driving while intoxicated, a misdemeanor, he had the discretion to release the defendant to a sober relative or friend, and that he would have released defendant if the charge had not been a felony.

Klein had asked Griffith about getting an independent blood alcohol test. Griffith told him he had the right to get one at his own expense. Although Klein testified Griffith did not tell him that he could have a doctor come to the jail to draw blood,

Griffith testified that he advised Klein of this right.

When Klein called his mother, they discussed getting a blood test and having neighbors come to the station to observe his condition. Dorothy Klein testified that she had $5,000 available for a bond and that she wanted to get her son released so she could take him to Boswell Hospital for a blood alcohol test. She did not arrange for a doctor to go to the jail because she did not know that such would be allowed, and because she did not think she could get a doctor to go to jail at 2:00 in the morning.

Klein and his mother concluded that neither an independent test nor observation by friends could be arranged. When the mother later called the jail at 3:00 a.m., she was told that the defendant was unavailable. Officer Gilchrist testified that the jail policy prevented her from being allowed to talk to her son. If the mother or a neighbor had come to the jail, they would not have been allowed to see the defendant.

Officer Gilchrist also testified that while there was a pre-set bail schedule for the charge of driving while intoxicated, a misdemeanor, there was no pre-set bail for driving while intoxicated while license revoked, a felony. He stated that if a justice of the peace had set a bond for Klein and the bond had been posted, he would have been released.

Gilchrist further testified that a doctor would have been allowed into the jail to take a blood sample. He admitted that this had never actually happened, although on one occasion arrangements made for a technician to take blood from another defendant were aborted when the technician did not show up.

Klein was not transported to the central Phoenix jail to see a magistrate for his initial appearance until 1:00 p.m. on July 12. He had an initial appearance at 2:00 p.m. and was released on his own recognizance at 4:00 p.m.

■ The state argues that the master bail schedule provided for by the terms of A.R.S. § 22–424 applies only to misdemeanors, including the charge of driving while intoxicated, and that it does not apply to the more serious felony charge. We disagree with the state. The provision reads in relevant part:

The police justice shall:

(1) Prepare a schedule of traffic violations not including the death of a person, listing specific bail for each violation.

(2) Designate a deputy other than a law enforcement officer and a specific location at which the deputy shall, during hours when the court is not open, set the amount of bail in accordance with the foregoing schedule and collect such bail, or accept proper bail bonds in lieu thereof, for and on behalf of the court.

*See also* A.R.S. § 22–112.

The statute does not differentiate between misdemeanors and felonies, but only states that the police justice shall prepare "a schedule of *traffic violations* not involving the death of a person...." (emphasis added). The charge here is indisputably for a traffic violation. Arizona Revised Statutes § 28–692.02 is found within the Uniform Act Regulating Traffic on Highways, A.R.S. §§ 28–601 *et seq.* It is not in the Arizona Criminal Code, A.R.S. §§ 13–101 *et seq.* While this is not dispositive because other criminal violations are found outside of Title 13 (*see, for example*, A.R.S. § 44–1995 relating to securities fraud), the charge is commonly considered a traffic violation. Indeed, Officer Griffith himself testified that he arrested Klein for a traffic violation. The distinction between classifying the offense as a misdemeanor or felony is that in the latter case the accused was driving when his license had been revoked, suspended, or refused. There is nothing in that circumstance that logically takes the crime out of the category of a traffic offense.

In *Smith v. Cada*, 114 Ariz. 510, 562 P.2d 390 (App.1977) and *Smith v. Ganske*, 114 Ariz. 515, 562 P.2d 395 (App.1977), this court specifically found that a refusal to release a person on bail who had been arrested for driving while intoxicated, a misdemeanor, and who had declined to take

the breath test, was a denial of due process because detention interfered with the defendant's right to secure independent proof of sobriety.

In support of its argument that the police justice only has jurisdiction to set a master bail schedule for misdemeanors, the state cites A.R.S. § 22–301, which provides:

The justice of the peace courts shall have jurisdiction of the following offenses committed within their respective precincts in which such courts are established....

....

(5) Felonies, but only for the purpose of commencing action and conducting proceedings through the preliminary examinations and to hold the defendant to answer to the superior court or to discharge the defendant if it appears that there is not probable cause to believe the defendant guilty of an offense.

■ This argument ignores the fact that a justice of the peace is expressly authorized, by other provisions of law, to release persons arrested for felonies. A magistrate can, at an initial appearance, determine the conditions of release for any class of crime. *See* Rule 4.2(a)(5), Arizona Rules of Criminal Procedure. A justice of the peace is a magistrate. A.R.S. § 1–215(13). That being the case it logically follows that a justice may set a master bail schedule for a traffic offense, even if it is a felony, because he is specifically authorized to do so by A.R.S. § 22–424(B).

■ We also reject the state's argument that Rule 4.1, which requires that a defendant be taken before a magistrate before bond is set, applies to this situation. The state contends that given the seriousness of a felony charge, the magistrate must evaluate the conditions necessary to insure the defendant's appearance. Rule 4.1 does not bar the result we reach. In *Cada, supra,* the state argued that the defendant had no right to immediate release on bail pursuant to § 22–424. We held that the state's reliance on Rule 4.1 "fails to consider the effect of A.R.S. § 22–424." We said:

The obvious purpose of this statute was to establish a master bail schedule to provide a speedy mechanism to effectuate bail and release for accused who are financially able to comply with that schedule.... An analysis of this problem, then, turns not upon whether the police can hold Cada for 24 hours without bail under Rule 4.1, but whether they can deprive him of the opportunity to avail himself of the provisions of A.R.S. § 22–424 and where the effect of that deprivation is to suppress evidence which may be favorable to him.

114 Ariz. at 513–14, 562 P.2d at 393–94.

■ Arizona Revised Statutes § 22–424 simply creates an exception to the general procedure prescribed by Rule 4.1. If Rule 4.1 were a statute, § 22–424 would control because it is the more specific. *E.g., City of Phoenix v. Superior Court In and For Maricopa County,* 139 Ariz. 175, 677 P.2d 1283 (1984). Even if we were to find the rule and the statute to be in conflict, the statute must govern where the matter concerns a substantive right. *State v. Hawkins,* 140 Ariz. 88, 680 P.2d 522 (App.1984). The right to release is certainly substantive, and even more so where the purpose of release is to obtain exculpatory evidence which will disappear very quickly with the passage of time. *See Cada, supra; Hawkins, supra.*

The state's argument that the more serious penalty which can ensue from the felony conviction enhances the defendant's incentive to flee and requires individual consideration by the magistrate before a bond is set is a plausible one. But its merits are more properly addressed to the legislature, which, as matters now stand, has clearly stated that there shall be a master bail schedule for traffic violations.

Appellant also argues that the legislature did not intend to include driving while intoxicated while license revoked within the scope of A.R.S. § 22–424 because that provision was enacted long before A.R.S. § 28–692.02 came into existence. This argument ignores the fact that § 22–424(B)

was *reenacted* by *Laws 1983*, ch. 271, § 7, effective January 1, 1984. Arizona Revised Statutes § 28–692.02 first designated the crime defined therein as a felony by *Laws 1978*, ch. 201, § 469, effective date, October 1, 1978, ch. 201, § 847. The crime was made a class 5 felony by *Laws 1982*, ch. 234, p. 725. Obviously, when the legislature reenacted § 22–424 in 1983, it could have excepted the felony offense from the master bail schedule provided for under § 22–424. Moreover, in reenacting § 22–424, subsequent to the holdings of *Cada* and *Ganske*, we assume that the legislature was aware that A.R.S. § 22–424 had been construed as applicable to the charge of driving while intoxicated. The statutory history does not support the state's argument.

■ The state's next argument is that, even if it was error not to release Klein expeditiously, such was harmless because he had alternative means for procuring an independent blood test. The state bases this argument on Griffith's testimony that he told appellant he could arrange for a doctor to come to the station. This ignores the fact that there was a conflict of evidence on this point and that the trial judge, in her minute entry, noted the conflict and, by clear inference, accepted the defendant's version. Even if that were not true, the state's argument is similar to one rejected in *Ganske*, where the state contended "that Ganske at that time could have made arrangements to have a doctor come to the jail to take a blood sample and his failure to make these arrangements was of his own choosing." 114 Ariz. at 516, 562 P.2d at 396. We said:

> In our opinion, this argument misses the point. At the time he called his attorney, Ganske had made what in his mind and in the mind of his attorney were reasonable arrangements to obtain a blood test, that is, immediate release on bail in order to go to a hospital and obtain the test. It is the interference with these arrangements that gives rise to the claimed denial of 'fair-play' in this

case, not that he could have pursued other alternatives.

114 Ariz. at 516, 562 P.2d at 396. Here, the course of action chosen by defendant was indentical to that chosen by Ganske, except that his "outside contact" was his mother, rather than his lawyer.

■ Lastly, the state argues that *California* ·*v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413, (1984), requires reversal. *Trombetta* held that the police need not preserve a breath sample to be able to introduce the results of a test at trial. *See Oshrin v. Coulter*, 142 Ariz. 109, 688 P.2d 1001 (1984). The case before us does not involve any alleged police duty to preserve evidence, but rather concerns a defendant's right to a "reasonable opportunity to procure independent blood testing in order to prove his sobriety." *Ganske*, 114 Ariz. at 516, 562 P.2d at 396. In our view, *Trombetta* does not affect the prior pronouncements of this court in *Cada* and *Ganske*.

For the above reasons, the judgment of the trial court is affirmed.

CONTRERAS and OGG, JJ., concur.

## MOTION FOR
## RECONSIDERATION DENIED

The state has filed a motion for reconsideration in which it raises a new argument. It contends that when the legislature reenacted A.R.S. § 22–424(B), it must have been aware of Rule 1(a), Rules of Procedure in Traffic Cases, which defines "traffic offense" as a misdemeanor offense under Title 28, Arizona Revised Statutes. The state reasons that the legislature must have intended that "traffic violations" referred to in A.R.S. § 22–424(B) were likewise limited to misdemeanor offenses. We disagree.

■ Identical words, even words used within the same act, may be found to have different meanings at different places in the text. *Sherman v. Hamilton*, 295 F.2d 516, 520 (1st Cir.1961). *See also Anthony Investment Co. v. Arizona Department of Economic Security*, 132 Ariz. 176, 644

P.2d 912 (App.1982), dealing with identical words appearing in separate acts. In question here are two similar terms which were adopted in completely different contexts. The Rules of Procedure in Traffic Cases are no more than the title implies—procedural rules for handling misdemeanor traffic matters. We agree with the state that the legislature must be presumed to have known that Rule 1(a) defined "traffic offense" as a misdemeanor when it reenacted A.R.S. § 22–424(B). Assuming that was the case, if the legislature had wanted the master bond schedule to apply to misdemeanors only, it could have specifically said so. Indeed, with the example provided by Rule 1 before the legislature, it seems likely that that is what the legislature would have done if it had intended to restrict the master bail schedule to misdemeanors.

Based upon the foregoing we deny the motion for reconsideration.

CONTRERAS and OGG, JJ., concur.