834 P.2d 154

**STATE of Arizona, Appellant,**

v.

**Ruben MELENDEZ, Appellee.**

**No. CR–91–0142–PR.**

Supreme Court of Arizona,
En Banc.

July 16, 1992.

dant's suppression motions, including a motion to suppress communications made to another inmate who had served as one of Defendant's "jailhouse lawyers" in preparation for a prison disciplinary proceeding arising from the killing. The state appealed. The court of appeals reversed the trial court's suppression order, *State v. Melendez*, 168 Ariz. 275, 277–78, 812 P.2d 1093, 1095–96 (Ct.App.1991), and Defendant appealed. We granted review to determine whether the trial court erred in suppressing the communications, a question of first impression. *See* Rule Rule 31.19(c), Ariz. R.Crim.P., 17 A.R.S. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

## FACTS AND PROCEDURAL HISTORY

On May 18, 1987, an inmate at the state prison was found stabbed to death. An investigation ensued, and Defendant was ultimately indicted for the killing in March 1989. On July 22, 1987, while the investigation was still in progress, Department of Corrections (DOC) personnel formally notified Defendant that he was accused of a DOC administrative violation for intentionally causing the victim's death and that he was to face a hearing before the prison disciplinary committee.

Under DOC regulations, inmates accused of major violations, including homicide, are entitled to representation by a retained attorney or, if unable to afford an attorney, by a willing staff member or fellow inmate. Ariz.Admin.Code § R5–1–603(D)(2).[1] Pursuant to the regulations, the DOC gave Defendant a form notifying him of the alleged disciplinary infraction and informing him of "the following rights":

A. To have a lawyer appear in your behalf and at your expense (major violations only).

a. The prisoner, upon his written request, shall be afforded reasonable opportunity to consult with his counsel or representative for the purpose of preparing his defense prior to the time of the hearing.

b. The counsel or representative must be designated by name in writing on the Request for Witness form.

Stephen D. Neely, Pima County Atty. by Jill Thorpe, Catherine M. Shovlin, Tucson, for appellant.

James W. Cochran, Tucson, for appellee.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Crane McClennen, Phoenix, for amicus curiae.

## OPINION

FELDMAN, Chief Justice.

Ruben Melendez (Defendant) was indicted for first degree murder for the 1987 killing of a fellow inmate at the Arizona State Prison in Tucson. Before trial, the trial court granted a number of Defen-

---

1. Ariz.Admin.Code § R5–1–603(D)(2) provides that:

    2. The prisoner may be represented by private counsel at the inmate's own expense, by a willing staff member, or by another available prisoner who is willing to serve in that capacity and is in the same institution.

B. To assistance of a willing and available prisoner in your institution, or a willing staff member to aid and assist you in your defense (major violations only).

C. The right to question witnesses who will testify against you.

D. The right to appeal any adverse ruling or decision.

E. The right to plead guilty or not guilty to the charges.

F. The right to call witnesses who will give relevant and material testimony including staff.

G. The right to remain silent.

Arizona Department of Corrections, Rules of Discipline, Form No. 1—Notice of Alleged Rule Violation. DOC also provided Defendant with a form on which to indicate his plea to the disciplinary charge, the witnesses he wished present at the disciplinary hearing, and the name of the person whom Defendant wished to "appoint ... as [his] representative." Arizona Department of Corrections, Rules of Discipline, Form No. 3A—Request for Witness—Plea–Waiver.

On August 20, 1987, Defendant selected inmate Les Kerekes as his representative. On November 6, Defendant was transferred to another prison unit; under prison rules, Kerekes could no longer represent him. Reporter's Transcript (R.T.), July 17, 1990, at 10, 29–30. On November 18, Defendant formally selected inmate William Plew as his new representative. Plew met with Defendant to discuss and prepare his defense. *Id.* at 51. Shortly thereafter, on November 27, Defendant was transferred to Florence, and so could no longer be represented by Plew.[2] Defendant allegedly requested but was not appointed another inmate to represent him in the disciplinary hearing, which was ultimately held on January 7, 1988. *Id.* at 30, 39–40. Defendant refused to present a defense to the alleged disciplinary violation without representation, and the hearing officer found him guilty as charged. Transcript of the

Disciplinary Hearing Tape, May 24, 1990, at 4, 9. The sanctions imposed on Defendant included a fifteen-day disciplinary isolation, a recommendation that his earned time credits be forfeited, Class III placement for ninety days, loss of all privileges except visitation for thirty days, and referral to the institutional classification committee. *Id.* at 10.

As the prosecution prepared for Defendant's ensuing criminal trial, Plew "came forward and agreed to give evidence against [Defendant and his codefendant] based on his conversations with them." State's Response to Petition for Review, at 5. Defendant moved to preclude Plew from testifying at trial regarding information received from Defendant in the course of representing him in the prison disciplinary proceeding, citing the attorney-client privilege, the fifth, sixth, and fourteenth amendments to the United States Constitution, and article 2, § 4 of the Arizona Constitution. The trial court ordered the evidence suppressed, without specifying upon which of Defendant's grounds the order was based. Minute Entry, Aug. 14, 1990. The court of appeals reversed the suppression order, holding that "a lay representative, even though authorized, is not an attorney under our privileged communications statutes." *Melendez*, 168 Ariz. at 277, 812 P.2d at 1095 (citing *Hunt v. Maricopa County Employees Merit Sys. Comm'n*, 127 Ariz. 259, 619 P.2d 1036 (1980)). The court did not address Defendant's due process arguments.

We granted Defendant's petition for review to resolve the following issue:

Whether the communications between the Defendant, a DOC inmate, and his lay legal representative are privileged either by operation of A.R.S. § 13–4062 or the Due Process Clause of the Fourteenth Amendment of the United States Constitution and/or art. 2, § 4 of the Arizona Constitution.

---

**2.** On October 22, DOC notified Defendant that his prisoner classification was being reconsidered, and, on October 29, Defendant's classification was changed, necessitating his eventual transfer to DOC's special management unit at

Florence, which ultimately occurred on November 27. Defendant thus selected and met with Plew after his classification was changed but before his transfer to Florence.

## DISCUSSION

██ The DOC regulations grant prisoners the right to representation by retained counsel, willing inmates, or prison staff in prison disciplinary hearings.[3] After being formally apprised of this right by prison officials, and never informed that communications with his representative would not be guaranteed confidentiality,[4] Defendant confided in Plew, his official inmate representative. The State now seeks to call Plew as a witness at Defendant's criminal trial to testify regarding communications made in the course of the inmate representation.

Defendant argues that to permit Plew to testify at trial under these circumstances would violate the principle of fundamental fairness that underlies due process.[5] Defendant has timely asserted claims under both the Arizona and United States Constitutions regarding an issue on which there is neither Arizona nor federal precedent on point. We therefore address Defendant's claim under the due process provision of the Arizona Constitution.

██ The touchstone of due process under both the Arizona and federal constitutions is fundamental fairness. *See Oshrin*

*v. Coulter*, 142 Ariz. 109, 111, 688 P.2d 1001, 1003 (1984) ("[T]he denial of due process is a denial of 'fundamental fairness, shocking to the universal sense of justice.'") (quoting *Crouch v. Justice of Peace Court of Sixth Precinct*, 7 Ariz.App. 460, 465–66, 440 P.2d 1000, 1005–06 (1968) and *Kinsella v. United States ex rel. Singleton*, 361 U.S. 234, 246, 80 S.Ct. 297, 304, 4 L.Ed.2d 268 (1960)). We agree with Defendant that to permit the state to introduce testimony garnered from communications between Defendant and his formal inmate representative would, under the circumstances, be fundamentally unfair and thus a deprivation of due process.

In *Welfare Rights Org. v. Crisan*, 33 Cal.3d 766, 190 Cal.Rptr. 919, 661 P.2d 1073 (1983), the California Supreme Court held that the California legislature, in enacting a statute authorizing lay representation in welfare rights administrative hearings, impliedly established a statutory privilege for confidential communications between a welfare claimant and his or her lay representative. While *Crisan* addressed an implied statutory privilege, and not due process, we nevertheless find one portion

---

**3.** Because the regulations grant the right to representation, we need not decide whether Defendant had a due process right to such representation under the circumstances of this case. *See Wolff v. McDonnell*, 418 U.S. 539, 570, 94 S.Ct. 2963, 2981–82, 41 L.Ed.2d 935 (1974) (no general due process right to retained or appointed counsel in prison disciplinary proceedings, but "[w]here an illiterate inmate is involved ... or where the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff."); *see also Baxter v. Palmigiano*, 425 U.S. 308, 315, 96 S.Ct. 1551, 1556, 47 L.Ed.2d 810 (1976) (no right to counsel in prison disciplinary proceeding even "where the charges involve conduct punishable as a crime under state law"). *But see Eng v. Coughlin*, 858 F.2d 889, 897–98 (2d Cir.1988) ("When the inmate is disabled, either by being confined full-time to [the special handling unit] or transferred from the prison in which the incidents occurred, the duty of assistance is greater because the inmate's ability to help himself is reduced. [Citations omitted.] If

the inmate's right to marshal evidence and present a defense to charges of breaches of prison disciplinary rules is to mean anything, then an inmate so disabled must be provided with some assistance."); R.T. at 12 (prison official "made an extra effort" to grant Defendant's request for a new inmate representative because he was transferred to a new prison unit "so he could properly prepare for the case").

**4.** A prison official testified that inmates were not told that their communications with their inmate representatives were not considered confidential. R.T. at 23. In addition, Defendant testified that he expected his communications with Plew to be confidential, *id.* at 92, and Plew testified that he never informed Defendant that his statements were not in confidence. *Id.* at 52.

**5.** Defendant also argues that Plew's testimony must be suppressed because the DOC regulations impliedly shield communications between a prisoner and his inmate representative under Arizona's statutory attorney-client privilege. *See* A.R.S. § 13–4062(2). Given our disposition of Defendant's due process claim, however, it is unnecessary for us to reach this issue.

of the *Crisan* court's reasoning relevant and highly compelling:

the Legislature must have implied [the existence of the privilege] as an integral part of the right to representation by lay persons. *Otherwise that right would, in truth, be a trap by inducing confidential communications and then allowing them to be used against the claimant.* We do not attribute such a sadistic intent to the Legislature.

190 Cal.Rptr. at 923, 661 P.2d at 1076–77 (emphasis added). In the case before us, the state—through the DOC—allowed Defendant inmate assistance and representation, formalized the representation process by regulation, and permitted Defendant to meet and consult with his representative. The state now seeks the representative's testimony at a trial regarding the very conduct that served as the basis for the disciplinary proceeding in which he represented Defendant. The effect of such testimony is to take what the state offered Defendant as a "right" to representation and turn it into a trap, depriving Defendant of his due process right to fundamental fairness. *See State v. Guerra*, 161 Ariz. 289, 296, 778 P.2d 1185, 1192 (1989) (fundamental fairness precludes prosecution from using "an arrested person's silence to impeach an explanation subsequently offered at trial" given "implicit assurance" in *Miranda* warnings "that silence will carry no penalty"); *Oshrin*, 142 Ariz. at 111, 688 P.2d at 1003 (fundamental fairness violated where individual did not attempt to obtain breath sample for analysis or to have other tests taken after being told by police that driving under the influence charges were dropped, but not told that charges could and likely would be reinstated later); *see also State v. Ross*, 166 Ariz. 579, 583–84, 804 P.2d 112, 116–17 (1990) (fundamental fairness precludes prosecution from violating terms of plea agreement); *State v. Maloney*, 102 Ariz. 495, 499, 433 P.2d 625, 629 (1967) (due process prohibits use in subsequent criminal proceeding of inculpatory statements made by child while under jurisdiction of juvenile court unless child and parents informed of right to counsel, privilege against self-incrimination, and of possibility of remand for trial as an adult, given "rehabilitative program of the juvenile court"); *State v. Flowers*, 159 Ariz. 469, 472, 768 P.2d 201, 204 (Ct.App.1989) ("fundamentally unfair to deny defendant the opportunity to withdraw from the probation violation agreement where, as here, the trial court's refusal to honor the bargain defendant made with the prosecutor renders invalid the consideration for her admission" of probation violation); *State v. Reidhead*, 152 Ariz. 231, 234, 731 P.2d 126, 129 (Ct.App.1986) ("An essential component of [fundamental] fairness is that, where a defendant and the state enter into a particular agreement, the state must comply with its promises.").

The state argues that in *People v. Velasquez*, 192 Cal.App.3d 319, 237 Cal.Rptr. 366 (1987), the California Court of Appeal declined to extend *Crisan* to create a privilege for communications between "jailhouse lawyers" and their "inmate clients." The court held that the defendant failed to prove the existence of the attorney-client relationship required to come under the privilege. *Id.* 237 Cal.Rptr. at 371. In distinguishing *Crisan*, however, the court noted the absence of a statute analogous to the one in *Crisan*. "This inducement to use lay representation (and thereby lay the foundation for a 'trap') is absent here. While use of 'jailhouse lawyers' is not prohibited, it is not encouraged or promoted by state action...." *Id.* at 371–72. In the case before us, however, the "inducement to use lay representation" is at the heart of Defendant's due process claim—a claim not addressed in *Velasquez*.

The state also cites several cases from other jurisdictions in which courts have held that no privilege attached to communications between inmates and their jailhouse lawyers. *See State v. Spell*, 399 So.2d 551, 556 (La.1981) (defendant's statements to fellow inmate, "assigned to the law library to help other prisoners with their legal problems by writing letters, preparing pleadings, and otherwise giving them whatever advice he could," not subject to attorney-client privilege); *People v. Barber*, 116 Ill.App.3d 767, 72 Ill.Dec. 472, 478–79, 452

N.E.2d 725, 731–32 (1983) (no attorney-client relationship between inmate and jailhouse lawyer so attorney-client privilege did not apply to their conversations); *Richardson v. Texas,* 744 S.W.2d 65, 74–75 (Tex. Cr.App.1987) (common law attorney-client privilege did not apply to communications between inmate-defendant and his inmate "legal advisor"). Like *Velasquez,* these cases confine their analyses to the attorney-client privilege and do not address whether the admission of a jailhouse lawyer's testimony might violate the defendant's right to due process. Moreover, none of these cases dealt with an inmate who secured representation through formal institutional procedures.[6]

Finally, the state cites *Hunt v. Maricopa County Employees Merit Sys. Comm'n,* 127 Ariz. 259, 264, 619 P.2d 1036, 1041 (1980), in which, after holding that lay representation of employees was permitted in administrative hearings dealing with personnel matters, we noted that "this grant of permission for lay representation does not affect the provisions of A.R.S. § 12–2234 which makes communications between *attorney* and client privileged. The lay representative is not an attorney within the mean[ing] of A.R.S. § 12–2234, so there is no statutory privilege to protect the confidentiality of communications between an employee and his lay representative." *Id.*

Our decision in *Hunt* was guided by a need to balance our constitutional duty to regulate the practice of law for the protection of the public with our concern over the ability of employees to secure competent representation to defend their interests. *Id.* at 263, 619 P.2d at 1040. Unlike in the present case, our principal focus in *Hunt* was on whether to permit lay representation at all. While we decided to permit laypersons to act as representatives in a limited capacity, we declined to imbue that representation with all of the benefits and burdens of the attorney-client relationship,

including the statutory evidentiary privilege. *Id.* at 264, 619 P.2d at 1041. In addition, our decision in *Hunt* was motivated in part by a recognition that the economics of labor disputes, particularly those involving small financial losses, can make it difficult for employees to hire counsel. *Id.* at 262–63, 619 P.2d at 1039–40. This difficulty is likely to be even greater, and the opportunity to hire licensed counsel even less, for prison inmates involved in disciplinary proceedings. In sum, we did not purport in *Hunt* to settle the issue of lay representation in other contexts, nor did we attempt to presage or address the due process issues that might arise.

We conclude, therefore, that it would be fundamentally unfair under the due process clause of the Arizona Constitution for the state to allow Defendant to obtain the services of an inmate representative for prison disciplinary proceedings and then, without warning to Defendant, offer the testimony of that inmate representative regarding confidential communications or information acquired in the course of prison representation. We therefore need not address Defendant's claim under the United States Constitution. *See Michigan v. Mosley,* 423 U.S. 96, 120–21, 96 S.Ct. 321, 334–35, 46 L.Ed.2d 313 (1975) (Brennan, J., dissenting).

### DISPOSITION

The trial court correctly precluded Defendant's inmate representative from testifying to communications received in the course of his representation of Defendant because, under the circumstances, the admission of such testimony at Defendant's subsequent criminal trial would be fundamentally unfair and would therefore violate Defendant's right to due process under the Arizona Constitution.[7] That portion of the court of appeals' opinion reversing the trial court's suppression order is therefore vacated, and the case is remanded to the

---

6. In *Spell,* the jailhouse lawyer was assigned to the law library, where he was expected to provide various inmates with legal assistance; he was not assigned to represent a particular inmate in a particular matter.

7. Our ruling, of course, does not apply to situations in which an inmate may attempt to preclude testimony from a percipient inmate-witness by choosing that inmate as his representative at a prison disciplinary proceeding.

superior court for further proceedings consistent with this opinion.

JAMES DUKE CAMERON, J. (retired), and HAIRE, Judge (retired), concur.

FRANK X. GORDON, Jr., J., did not participate in this decision; pursuant to Ariz. Const. art. 6, § 3, the Honorable LEVI RAY HAIRE, Judge (retired) of the Arizona Court of Appeals, Division One, was designated to sit in his stead.

MOELLER, Vice Chief Justice, specially concurring.

I concur in the result reached by the majority, namely, that the state may not use Plew as a witness.

CORCORAN, J., concurs.