723 P.2d 655

**David T. HINSON, Petitioner,**

v.

**Hon. Rufus C. COULTER, Jr., Judge of the Superior Court, State of Arizona, in and for the County of Maricopa, Respondent,**

**and**

**STATE of Arizona, Real Party in Interest.**

**No. 18452–SA.**

Supreme Court of Arizona,
In Banc.

June 30, 1986.

Reconsideration Denied Sept. 9, 1986.

Patterson & Terribile, P.A. by Daniel B. Patterson, Phoenix, for petitioner.

Thomas Collins, Maricopa County Atty. by H. Allen Gerhardt and Elizabeth A. Kolberg, Deputy Maricopa County Attys., Phoenix, for real party in interest.

CAMERON, Justice.

The defendant (petitioner), David T. Hinson, is charged with four counts of driving while intoxicated (DWI) and three counts of driving with a blood alcohol content in excess of .10 percent. A.R.S. § 28–692. The charges were all class 5 felonies, as petitioner has two prior DWI convictions. A.R.S. § 28–692.01(F). From a denial of

defendant's motion to dismiss, defendant petitioned this court for a special action which we granted. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and Rule 8, Arizona Rules for Special Actions, 17A A.R.S..

The issues to be resolved are:

1. Whether the application of A.R.S. § 28–692.01(F) to petitioner offends the fundamental fairness concept of due process of law.

2. Whether the delay in prosecuting the defendant was a violation of our speedy trial rules. Rule 8, Rules of Criminal Procedure, 17 A.R.S..

The facts follow. In 1980, defendant was twice convicted of driving while intoxicated with a suspended license. The first conviction arose from an incident occurring on 4 January 1980, the second from an incident on 11 May 1980.

In 1984, defendant was arrested for DWI on four occasions: on 26 February, on 5 April, on 17 May, and on 8 June. On each occasion, defendant was booked, instructed to appear at a preliminary hearing and released without being required to post bond. The defendant alleges that when he appeared for each of the preliminary hearings at the time indicated, he was either told that there was no record of the charges or that they had been "scratched".

On 1 July 1985, defendant was indicted by the grand jury for seven counts of driving while intoxicated, or driving with a blood alcohol level in excess of .10 percent with two prior DWI convictions.

Defendant filed a motion to dismiss the indictments. The motion was denied. We granted the petition because an issue of statewide importance in the prosecution of drunk driving cases is raised.

## THE APPLICATION OF A.R.S. § 28–692.01(F)

In 1983, the Legislature amended A.R.S. § 28–692.01(F) to read:

If a person is convicted of a third or subsequent violation of § 28–692 within

a period of *sixty* months, the person is guilty of a class 5 felony and shall not be eligible for probation, pardon, parole, commutation or suspension of sentence or release on any other basis except as specifically authorized by § 31–233, subsection A or B until the person has served not less than six months in prison. The dates of the commission of the offense are the determining factor in applying this subsection....

Laws 1983, Chapter 279 (emphasis added). This amendment, which was effective 26 July 1983, expanded the time period for consideration of prior DWI convictions under this section from thirty-six to sixty months. Defendant claims that the thirty-six month period during which his prior DWI convictions could be considered under the former § 28–692.01(F) expired on 14 January 1983, and 11 May 1983, respectively. Since both of these dates are before the effective date of the 1983 amendment changing the period in A.R.S. § 28–692.01(F) to sixty months, defendant argues that it is fundamentally unfair and a violation of due process to resurrect his prior convictions and use them against him.

■ To determine if the application of the sixty month time period to defendant is fundamentally unfair or a violation of due process, we must look to see if this is an *ex post facto* law. The case of *State v. Yellowmexican*, 142 Ariz. 205, 688 P.2d 1097 (App.1984) (approved 142 Ariz. 91, 688 P.2d 983 (1984)), is instructive on this issue. In that case, on a similar set of facts, the court of appeals construed legislation adding a penalty for a third DWI violation within 36 months of previous conviction and stated:

It is clear that no greater or additional penalty is imposed upon defendant for his earlier offenses by virtue of A.R.S. § 28–692.01(F). Defendant was simply put on notice that if he committed a third DWI offense within thirty-six months, his punishment for the third offense would be enhanced because of his prior convictions. Conversely, if the defendant did not commit a third offense within the thirty-six month period he would suf-

fer no greater punishment for having committed the two prior offenses. Thus, it is the defendant's conduct in committing the third offense which triggers the recidivist feature of A.R.S. § 28–692.01 (F). For that reason, the statute is not an *ex post facto* law.

*State v. Yellowmexican*, 142 Ariz. at 208, 688 P.2d at 1100. The appeals court held that the application of A.R.S. § 28–692.-01(F) to defendant was not an *ex post facto* law despite the fact its enactment occurred subsequent to his two previous DWI convictions. *Id.* Similarly, we do not believe that the application to petitioner of the extended sixty month period, now contained in A.R.S. § 28–692.01(F), was an *ex post facto* law. By the sixty month statute, defendant was merely informed that if he committed another DWI offense within sixty months of his previous offenses, his punishment would be enhanced. This is the law at the time of the later offense. The Legislature may enhance punishment for a second offense based upon previous conduct by the defendant even though the enhancement provisions were not present at the time of the previous offense. *State v. Yellowmexican, supra.* It is the range of punishment in force at the time of the later offense, and of which the defendant had notice when he committed the later offense, that controls. *See also State of Arizona ex rel. Collins v. Udall*, 149 Ariz. 199, 717 P.2d 878 (1986). We find no error.

## DELAY

Defendant contends that he was denied due process of law by the state's allegedly egregious and unjustified delay. The conduct of defendant at issue occurred on 26 February 1984, on 5 April 1984, on 17 May 1984, and on 8 June 1984. Four separate preliminary hearings were "scratched". The grand jury indictment was returned 1 July 1985, which was seventeen (17) months, fifteen (15) months, fourteen (14) months, and thirteen (13) months respectively, after the four arrests. Trial was finally set for 5 November 1985, which was twenty-one (21) months, nineteen (19)

months, eighteen (18) months, and seventeen (17) months respectively, after each arrest.

Defendant argues that this is the type of conduct we found to be a violation of due process when we stated that:

> In closing we note with concern the amount of time that elapsed between the petitioner's arrest and release, the time the charges were filed, 25 July, 1983, almost four months later, and the petitioner's arrest on 24 December, 1983. Trial was not set until 6 March, 1984, almost a year after his original arrest and release. If punishment is a deterrent in a criminal case, it must be imposed as near to the offense as reasonably possible. Having arrested a person, the state has the obligation to proceed forthwith to bring formal charges against that person or drop them. Though the procedure followed here does not violate the letter of our speedy trial rule, Rule 8, Arizona Rules of Criminal Procedure, 17 A.R.S., it does violate the spirit of the rule and is a fact we will consider when determining whether a defendant has been denied due process of law.

*Oshrin v. Coulter*, 142 Ariz. 109, 113, 688 P.2d 1001, 1005 (1984).

The state contends that this is a case of pre-indictment delay and that there has been no denial of due process. The test for a denial of due process by reason of preindictment delay, the state asserts, is: (1) did the prosecutor intentionally delay the proceedings in order to gain a tactical advantage or to harass the defendant and (2) is the defendant actually prejudiced. *U.S. v. Marion*, 404 U.S. 307, 325, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971); *State v. Torres*, 116 Ariz. 377, 378, 569 P.2d 807, 808 (1977). There is no allegation that the prosecution herein either sought to harass or gain a tactical advantage over the defendant. Indeed it would appear from the record before this court that it was the failure of the state to provide sufficient personnel for the processing of DWI cases that was the main cause of the delay. Further, the only specific allegations of prejudice made by the defendant are: that he made no notes or recorded recollections about any of the incidents; defendant does not know if there were witnesses to any of the incidents; and defendant's personal recollection of the events has been affected by the delay. Such minimal prejudice, the state contends, has already been deemed insufficient. *State v. Van Arsdale*, 133 Ariz. 579, 581 n.2, 582, 653 P.2d 36, 38 n.2, 39 (App.1982). Therefore, the state maintains, there is nothing in the delay that requires dismissal as a violation of due process.

We do not believe however that this is a case of pre-indictment delay. This is a case of delay under Rule 8.2(a) of the Rules of Criminal Procedure, 17 A.R.S. which mandates that a defendant must be tried within 150 days from the date of arrest.

We believe that DWI cases are unique in three aspects. First, they are matters in which the evidence is often fleeting. The "shelf life" of breath and blood samples, for example, is short. Also, evidence of defendant's guilt or innocence is in many cases based on subjective opinions and impressions of the cause of defendant's conduct. Such opinions and impressions are often dimmed by time.

Second, the informal matter in which DWI cases appear to be handled frequently leads defendants to believe that they do not have to take any action to preserve evidence, make notes, or contact witnesses who might be available for their defense. The defendant is usually arrested, taken to jail and then released. The indictment follows much later. As we have stated:

> In the instant case, the officers told the defendant that the charges were dropped and the petitioner was free to go, but failed to inform him that charges could and most likely would be filed later. The petitioner was thus led to believe that no further action would be taken against him and he did not attempt to obtain the sample for analysis or have other tests taken upon his release. A person in custody, upon being released under these circumstances, can reasonably be expect-

ed to rely upon the statement that the charges are dropped or scratched and assume that no further action will be taken by the state. It is not then unreasonable to fail to take the sample for testing. By the time formal charges are filed, the sample is destroyed and it is impossible to test the reliability of the first sample with the second sample. We find this a violation of fundamental fairness raising a question of denial of due process contrary to the Fourteenth Amendment to the United States Constitution.

*Oshrin v. Coulter,* 142 Ariz. at 111, 688 P.2d at 1003 (citations omitted).

Third and most importantly, the legislature's clear intention in enacting the new DWI statutes was to remove from the streets and highways of the state the drunken driver who poses a clear threat to the safety of the public.

When enacting the statutes in 1982, the legislature included the following statement:

Section 1. *Purpose*

By this act the legislature recognizes that alcohol-impaired drivers are a danger to the people of this state. It is therefore the purpose of this act:

1. To insure that any person who operates a motor vehicle within this state while affected by alcohol will be prosecuted to the full extent of the law by those who administer the criminal justice system.

2. To maintain public records of the dispositions of these cases for public scrutiny.

3. To provide that driving while having a .10 or higher blood alcohol level is a criminal offense.

4. To deter persons from driving while affected by alcohol by providing for penalties that are commensurate with the seriousness of this offense.

Law 1982, Ch. 234.

Delay in the prosecution of these cases such as occurred here is not prosecution to the "full extent of the law", does not "deter persons from driving while affected by

alcohol" and does not provide "penalties that are commensurate with the seriousness of the offense." The public perceives, quite correctly, that drunk drivers are being allowed to continue to drink and drive unprosecuted and unpunished. Further, there is no deterrent effect to the drunken driver if it appears that there is no timely penalty for his conduct. In the instant case, petitioner was arrested four times in five months and yet was still not indicted for over *one year.* We have previously observed:

Society, also, has an interest in knowing who is guilty as soon as possible. Assuming that the guilty will be punished, society is then able to take from its midst, if imprisonment is indicated or to have under supervision if probation is granted, those persons who might otherwise be committing crimes. In addition, if there is a deterrent value in conviction and punishment as we believe there is, the swifter the punishment the greater the deterrent; and conversely, the longer criminal trials are prolonged the less deterrent value there is in trial and punishment.

*State ex rel. Berger v. Superior Court,* 111 Ariz. 335, 340, 529 P.2d 686, 671 (1974). Had defendant herein been promptly tried and convicted of the 26 February 1984 offense, he might not have been in a position to commit the later offenses on 5 April, 17 May and 8 June of 1984.

We find this situation intolerable. It should not be impossible to prosecute a suspected drunk driver within a reasonable time after arrest. The cases do not require long investigative delays, as most of the evidence is gathered contemporaneously with arrest. The prosecutor cannot hide behind the rule that defendants must show that the prosecutor intentionally delayed the proceeding in order to gain a tactical advantage or to harass the defendant. Indeed, unjustified delay can ripen into intentional delay when the state fails to prosecute diligently.

■ We believe that because of the unique nature of the offense of driving while under the influence of intoxicants or with a blood alcohol reading of more than .10, that Rule 8.2(a) of the Rules of Criminal Procedure must be strictly followed and that the accused must be tried within 150 days of arrest regardless of whether the offense has been "scratched" or "dismissed" after arrest and release. In light of the age of many cases before this court, this rule may appear to be harsh but our previous statements have been ignored and it appears to be the only means this court has to ensure that the intent of the legislature is followed and that drunk drivers are removed from the streets. If this does not result in speedier disposition, this court is prepared to amend the rules to provide for an even stricter application of speedy trial requirements in DWI cases.

We wish to make clear what we are saying here. After the police have arrested and removed a drunken driver from the highway as the statute and caselaw contemplates must be done, the prosecutor must proceed to charge or indict as well as try the defendant within the 150 day limit mandated by Rule 8.2(a) of the Rules of Criminal Procedure if not in custody and 120 days from arrest if in custody pursuant to Rule 8.2(b), Ariz.R.Crim.P., 17 A.R.S.. Failure to proceed promptly will result in a dismissal with prejudice, unless the exceptions contained in Rule 8 apply. In any event, the defendant must be tried within 150 days of arrest as provided in Rule 8.2(a), Ariz.R.Crim.P., 17 A.R.S.. This holding is prospective only and applies to those arrested after the mandate in this case.

The matter is remanded to the trial court with directions that if the state still wishes to prosecute, that the trial on each case shall commence within sixty days of the issuance of the mandate herein. Rule 8.2(d), Ariz.R.Crim.P., 17 A.R.S.. If the state moves to dismiss and the trial court agrees, the dismissal shall be with prejudice. Remanded.

GORDON, V.C.J., and FELDMAN, J., concur.

HAYS, J., did not participate in the determination of this matter.

HOLOHAN, Chief Justice, specially concurring and dissenting.

My concurrence with the majority opinion is limited to the disposition made in this particular case. I dissent from the position that a so-called DWI case must be tried within the 150 days provided by Rule 8, irrespective of whether there had been an intervening dismissal. I believe the majority's position rests on a complete lack of appreciation of the magnitude of the challenge which the DWI statute has made to the justice systems of this state. Some caseload data may help to understand the current situation in the court system. At the end of December, 1985 there were 55,829 DWI cases pending in the trial courts of this state. That was an increase of 22,896 over the 31,933 cases pending at the end of 1984. Arizona Legislative Council, Quarterly Report, February 1986. There are approximately 4,400 DWI cases filed per month in the trial courts. During 1985 there were 30,525 DWI cases terminated by conviction or dismissal. DWI cases occupy a significant amount of the judicial time available for the trial of criminal matters in the non-record courts. During 1985 the Legislature authorized some financial assistance to the municipal courts to employ additional judges to hear DWI cases, but no aid has been given to the justice courts to help them meet the heavy demands of DWI cases on their trial schedules.

The volume of cases affects not only courts, it also challenges the resources of both prosecution and defense. The present case represents the extreme and worst consequences of dealing with case volume without internal management checks. The appellant was charged with felony DWI. Prior to the date set for the preliminary hearing, the charge was dismissed. Although not specifically shown, it appears that the records of the prior DWI convic-

tions had not been obtained. Faced with the lack of evidence of the prior convictions, the prosecutor secured a dismissal without prejudice. The case languished until it was re-discovered much later, and the present prosecution was undertaken. The way the case was handled is not defensible, but the neglect of the prosecutor's office in this case should not result in the remedy fashioned by this court.

The majority opinion refers to the stated legislative purpose for the DWI legislation (at 310, 723 P.2d at 659), but the majority fails to point out that there was no provision by the Legislature for any assistance to the justice system to carry out the purposes of the statute. It was not until 1985, when the volume of cases had become a crisis, that the Legislature finally provided additional funds to some courts to hire additional personnel to meet the crisis. There has, of course, been no provision on the state level for any financial assistance to aid prosecuting attorneys or for public defenders to expand personnel to handle the volume of cases.

The rigid 150 day time limit will result in more DWI cases being terminated—by dismissal. Somehow I fail to see how such dispositions will aid in getting drunk drivers off the road. The prosecution in this case was neglectful of its obligations to follow through with the prosecution of the defendant, but the neglect in this case does not justify the court's absolute "no dismissal try 'em in 150 days" rule. By ignoring the realities of the situation, the court has fashioned a remedy which will serve to benefit the guilty because we have court congestion. The rigid time limit will be especially harmful to prosecution of felony DWI cases. Obtaining the necessary records of past convictions from one of the 150 non-record courts and completing the prosecution within 150 days will be a difficult task. The delay in obtaining records of prior conviction is usually the result of slow processing by busy, understaffed non-record courts. This court should pursue administrative efforts to shorten the delay in this area. Grand directives will not solve the problem of delay nor keep drunks off the roads.