880 P.2d 629

Robert Houston HUMBLE, Petitioner,

v.

SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, The Honorable Ronald S. Reinstein, a judge thereof, Respondent Judge,

The STATE of Arizona, ex rel. Richard M. ROMLEY, Maricopa County Attorney, Real Party in Interest.

No. 1 CA-SA 93-0217.

Court of Appeals of Arizona, Division 1, Department B.

Nov. 23, 1993.

Review Denied Sept. 20, 1994.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Appeals Div., and Richard M. Romley, Maricopa County Atty. by Arthur Hazelton and Pam Hearn, Deputy County Attys., Phœnix, for real party in interest.

Dean W. Trebesch, Maricopa County Public Defender by Patricia A. O'Connor, Deputy Public Defender, Phoenix, for petitioner.

OPINION

JACOBSON, Presiding Judge.

Petitioner Robert Houston Humble (defendant) seeks special action review of the trial court's order denying his motion to dismiss his indictment on two counts of driving while under the influence of intoxicating liquors (DUI) with two prior felonies, on the basis that the five year delay from his indictment to his arrest violated his rights to a speedy trial on both constitutional and procedural grounds. The issue before us is whether the state exercised due diligence in its efforts to serve defendant with notice of these charges, which have been pending since 1988.

### SPECIAL ACTION JURISDICTION

As a preliminary matter, we note that this court does not generally accept special action review of a denial of a motion to dismiss. *See generally Maricopa County v. Superior Court,* 170 Ariz. 248, 823 P.2d 696 (App.1991). This is because issues in support of dismissal can be raised in an appeal from conviction. *See, e.g., State v. Mendoza,* 170 Ariz. 184, 823 P.2d 51 (1992) (defendant appealed from DUI conviction contending trial court should have granted his motion to dismiss for violation of speedy trial rules). Arizona courts have, however, utilized special action review of speedy trial issues in DUI cases in which the trial court has been found to abuse its discretion in refusing to dismiss charges with prejudice when the state has not exercised due diligence. *See, e.g., Duron v. Fleischman,* 156 Ariz. 189, 751 P.2d 39 (App.1988); *Hinson v. Coulter,* 150 Ariz. 306, 723 P.2d 655 (1986), *overruled on other grounds* by *Mendoza; Oshrin v. Coulter,* 142 Ariz. 109, 688 P.2d 1001 (1984); *see also Cornell v. Superior Court,* 160 Ariz. 1, 770 P.2d 305 (1989) (court of appeals declined special action jurisdiction but supreme court granted review to reverse and remand to trial court). Because we believe this case is similar, in the exercise of our discretion, we accept special action jurisdiction.

### FACTS AND PROCEDURAL HISTORY

Defendant was arrested for DUI on March 16, 1988. The "Alcohol Influence Report"

completed by the arresting officer indicates that defendant provided police with his correct name, current local address and telephone number, social security number, and the name and address of the owner of the vehicle he was driving. The "Arrest/Booking Record" also indicates he provided the name and local telephone number of his father, but not an address. Both documents indicated "none" in spaces provided for defendant's employer's name, address, and phone number.

Defendant apparently was provided with a second sample of his breath test at the time of his arrest, was advised of his preliminary hearing date, and was released. Defendant alleges that, at a subsequent preliminary hearing in Northwest Justice Court, he was told his case was "scratched," and was given no further information.

On May 5, 1988, an indictment was filed, charging defendant with two counts of DUI with two prior convictions, class 5 felonies. On that date, the Maricopa County Sheriff's Office prepared a "summons worksheet," in preparation of service of the indictment summons on defendant at his home address. This worksheet again contained defendant's correct home address and telephone number, social security number, and physical description, in typewritten notation. Under the category "Occupation—Employer and Address," the worksheet had a typewritten notation of "NONE" followed by a handwritten entry "Simpson Concrete/carpenter" with a typewritten telephone listing of "NONE." Defendant's father's phone number was not included on the worksheet.

On May 10, 1988, at 11:50 a.m., Officer Robert Bradshaw, a reserve deputy with the Maricopa County Sheriff's Office, attempted to serve defendant with the summons at his home address. When he got no response, he left a card that contained an emblem of the Maricopa County Sheriff's Office, a phone number to call, and a reference number. Officer Bradshaw testified that he affixed the card as an "attention-getter," "someplace in the entrance way of the premises," perhaps folded and wedged in the door at eye level, but that he had no memory of this specific service attempt and did not recall if the residence was a private home or an apartment building. Officer Bradshaw did not recall an employer's name entered on the worksheet at the time he attempted service, stating, "there is nothing usually on it in that category in handwriting. Usually I put it on later. Some of them have more research done on it." He attempted no further service on defendant because he did not have time and he had too many other summonses to deliver. He returned the worksheet to the sheriff's office with the notation, "05–10–88 1150 HRS. ATT. SERVICE—NO ANSWER—LEFT CARD."

The worksheet indicates that a copy of the summons was mailed to defendant's home address on June 6, 1988, by certified mail, restricted delivery, with return receipt requested. The post office left notice of its first attempt to deliver the letter on June 8, 1988, left a second notice on June 17, 1988, and thereafter returned the letter to the sheriff's office on June 23, 1988, as "unclaimed."

A state's witness testified that the procedure in the sheriff's office when a certified mail summons is returned is to forward the matter to the county attorney for consideration of the issuance of an arrest warrant. A "warrant worksheet" is filled out, and if a work address appears, a warrant team generally attempts personal service. In this case, the warrant issued on July 14, 1988, and the worksheet was completed on July 20, 1988, with the notation, "This was previously a summons. See attached worksheet," but left blank the category for defendant's occupation, employer, and employer's address.

No further efforts were made to locate or serve defendant with the summons or the warrant. Defendant alleges that, although he moved from the listed address in September 1988, his father has remained available at the phone number he provided at the time of his arrest, with knowledge of defendant's whereabouts during several moves, that defendant has been employed during the last 14 years at Simpson Concrete, and that he has received state unemployment benefits sporadically since the time of his arrest, under his correct social security number and at his

current address. The state does not contest these factual allegations.

Defendant was arrested on the outstanding 1988 warrant on February 17, 1993, when contacted by police as a victim in an unrelated matter. On July 13, 1993, he filed a motion to dismiss the indictment with prejudice for violation of his speedy trial rights under Rule 8, Arizona Rules of Criminal Procedure. He subsequently filed a supplemental motion to dismiss for violation of his constitutional rights to a speedy trial under the United States and Arizona Constitutions. The state responded, arguing that the delay should be considered as excluded time under Rule 8.4(a), occasioned by defendant because the state had exercised due diligence in attempting to serve defendant, and thus his speedy trial rights had not been violated. After an evidentiary hearing, the trial court ruled:

> I agree that the State was totally deficient as far as just leaving the card there, and if I remember right, years ago when we were dealing with all the Hinson[1] cases and having these hearings on a b[i]-weekly basis, one of the issues that came up and has come up before in appellate cases, is the issue of why don't they just send certified mail.
>
> And in this case, while they should have done more, I believe as far as contacting the employer and father and what not, the fact of the matter is they did send certified mail....
>
> ... And because of that, I think the State did try to serve the defendant with sufficient notice by sending certified mail to the defendant's address that he listed at the time of his arrest.
>
> Therefore, it is ordered denying the motion to dismiss.

Defendant petitioned this court for special action relief, and the trial court stayed further proceedings pending our resolution.

1. *Hinson v. Coulter*, 150 Ariz. 306, 723 P.2d 655 (1986), overruled by *State v. Mendoza*, 170 Ariz.

## ANALYSIS

### A. Procedural Rights to Speedy Trial

█ We first examine defendant's procedural rights to a speedy trial under Rule 8, Arizona Rules of Criminal Procedure, because, if that rule is dispositive, we need not reach the constitutional issues. *See Cornell v. Superior Court*, 160 Ariz. 1, 3, 770 P.2d 305, 307 (1989). Rule 8.2, Arizona Rules of Criminal Procedure, provides time limits in which criminal defendants must be tried. In this case, the provisions of Rule 8.2(a) required that defendant be tried within 150 days of his arrest or service of the summons. The computation of those time limits may be extended, however, by the provisions of Rule 8.4(a), which excludes "[d]elays occasioned by or on behalf of the defendant, including, but not limited to, delays caused by ... the defendant's absence or incompetence, or his inability to be arrested or taken into custody in Arizona." A defendant's "inability to be arrested" does not depend upon a showing that the defendant has willfully avoided prosecution, but has been construed also to include circumstances in which the prosecution has been unable to serve a defendant despite due diligence in its efforts to locate him. *State v. Tarkington*, 157 Ariz. 556, 760 P.2d 556 (App.1988). We have described "due diligence" as follows:

> Although the question of due diligence necessarily turns upon the details of each case, the standard is constant: whether the state took reasonable steps to locate the accused based upon all of the information that it possessed. Characteristic of cases of inadequate diligence is the state's failure to pursue significant leads.

*State v. Armstrong*, 160 Ariz. 159, 160, 771 P.2d 889, 890 (App.1989).

█ Once a defendant has established a prima facie violation of the Rule 8 time limit and the state seeks exclusion of time under Rule 8.4, the state bears the burden of establishing the grounds for exclusion of the delay. Thus, absent a showing of a defendant's willful avoidance of service, the state has the

184, 823 P.2d 51 (1992). *See* discussion *infra*.

burden to show due diligence in order to exclude the time during which it was unable to locate a defendant for service. *State v. Snow,* 157 Ariz. 597, 598, 760 P.2d 597, 598 (App.1988); *Duron v. Fleishman,* 156 Ariz. 189, 192, 751 P.2d 39, 42 (App.1988). A trial court is not required to hold an evidentiary hearing to determine this issue under the speedy trial rules, but may consider the parties' motions containing undisputed facts as well as any evidence presented. *Tarkington,* 157 Ariz. at 558–59, 760 P.2d at 558–59. In reviewing a trial court's finding of due diligence and a refusal to dismiss an indictment, this court will not disturb the trial court's discretion if there is any reasonable evidence to support that conclusion. *Armstrong,* 160 Ariz. at 161, 771 P.2d at 891.

■ In this case, the state contends the trial court's order is supported by evidence that the state attempted to serve defendant by utilizing two separate methods of service that are acceptable under Rule 3.4, Arizona Rules of Criminal Procedure: personal service and certified mail, with return receipt requested.[2] However, "[t]he fact that the state has chosen a permissible means of attempting to serve a defendant does not necessarily mean that the state has exercised due diligence in ascertaining his whereabouts." *Duron,* 156 Ariz. at 192, 751 P.2d at 42. Rather, "due diligence" requires a showing that the state has followed "the usual investigative procedures for determining the whereabouts of a person." *Id., citing Standards for Criminal Justice,* Standard 12–2.3 (2d ed. 1986).

In each of the cases in which we have found a lack of due diligence, we have found the state failed to pursue significant leads, regardless whether the state attempted one or more of the approved methods of service under Rule 3.4. *See Armstrong,* 160 Ariz. at 160–61, 771 P.2d at 890–91 (two attempts to serve defendant at home and notes left, but no effort to contact a neighbor or motor vehicle division, or to phone defendant or mail him notice of summons); *Duron,* 156

Ariz. at 192, 751 P.2d at 42 (state failed in personal service to postal address, but did not mail notice to defendant's postal box or contact counsel of record); *Snow,* 157 Ariz. at 599, 760 P.2d at 599 (personal service at residence failed because defendant had moved, but no effort to locate defendant at employer or check with post office for forwarding address). Furthermore, we have previously rejected, as evidence of due diligence, the state's contention that its failure to attempt alternative methods of service after investigative efforts was justified by its "lack of manpower and resources." *Snow,* 157 Ariz. at 599, 760 P.2d at 599.

■ We find the circumstances in this case to be very consistent with those cases in which we have found a lack of due diligence. As defendant points out, and the state does not contest, the state did not pursue four significant investigative leads that would have likely led to defendant's successful service both before and after he moved in September 1988: (1) the name of his employer was known to the state at least by the time the warrant issued, and that employer was listed in the phone directory; (2) the state never attempted to contact defendant's father, who lived locally and whose current telephone number was known since 1988; (3) no attempt was made at residential service during nonworking hours at his home between March 1988, when he was first arrested, and September 1988, when he moved; and (4) no attempt was made to trace his name or social security number through other state records, such as unemployment benefits, that would have shown his current address. Moreover, the record indicates no attempt at all to execute the warrant.

■ Furthermore, we reject the state's implication that defendant had some burden to contact the prosecution as a result of its attempts at service. "A defendant has no duty to bring himself to trial." *Barker v. Wingo,* 407 U.S. 514, 527, 92 S.Ct. 2182, 2190, 33 L.Ed.2d 101 (1972). The only relevance of defendant's actions or inactions in this case

---

**2.** Rule 3.4 provides: "The summons may be served in the same manner as the summons in a civil action, except that service may not be by publication. In addition, a summons may be served by certified or registered mail, return receipt requested. Return of the receipt shall be prima facie evidence of service."

would be to show avoidance of service that would justify exclusion of speedy trial time. We stress again that the burden is on the state to provide evidence that defendant avoided service. Contrary to the state's contentions in the pleadings and at oral argument in this case, defendant had no burden to provide evidence that he did not know of the charges and had never received the card left in his door or the postal notices of attempted delivery.

The state has produced no evidence on this record from which we could infer that defendant had any knowledge of the indictment charges or the purpose of the state's attempts to reach him. No evidence was presented that defendant ever received the "card" left "someplace in the entrance way" of his residence, or, if he did, that it contained any message that would compel him to respond to it or to know to what it referred.[3] Additionally, the fact that the post office indicated that defendant twice was notified of attempts to deliver certified mail to him does not establish that defendant knew who sent such mail or to what it related. If the state wanted to notify defendant that it was attempting to serve him on these charges, it could have easily notified him by telephone or by regular mail that he should contact the sheriff's office regarding service of the summons. However, the state made no attempt to make defendant aware of its failed attempts at service, or to attempt alternative reasonable means to serve him.

On this record, we find no evidence that defendant attempted to avoid service in a way that would entitle the state to exclusion of this time under Rule 8.4(a). Nor, we conclude, do we find any reasonable evidence that the state exercised due diligence in attempting to locate defendant in light of the significant investigative leads that it possessed and ignored. Under these circumstances, we hold that the trial court abused its discretion by implicitly excluding this time under Rule 8.4(a) in denying defendant's motion to dismiss the indictment for a violation of his rights to speedy trial under Rule 8.

## B. Effect of Rule 8 Violation: Constitutional Considerations

Having concluded that the provisions of Rule 8 were violated in this case, we must next determine the appropriate remedy. Rule 8.6 provides as follows:

> *Violations.* If the court determines after considering the exclusions of Rule 8.4, that a time limit established by Rule 8.2(a) ... has been violated, it shall on motion of the defendant, or on its own initiative, dismiss the prosecution with or without prejudice.

Generally, a trial court has discretion under Rule 8.6 to determine whether a dismissal is with or without prejudice. *See State ex rel. DeConcini v. Superior Court,* 25 Ariz.App. 173, 175, 541 P.2d 964, 966 (1975). However, our supreme court formerly construed the provisions of this rule strictly in the context of DUI cases, requiring dismissal with prejudice whenever a DUI case was not tried within the 150 day limit. *Hinson v. Coulter,* 150 Ariz. 306, 311, 723 P.2d 655, 660 (1986). *Hinson* was recently overruled by *State v. Mendoza,* 170 Ariz. 184, 823 P.2d 51 (1992), in which our supreme court abolished the absolute rule of dismissal with prejudice, and held that if a speedy trial violation occurs, the remedy is to be determined by the prejudice to defendant, on a case-by-case basis.[4] *Id.* at 191, 823 P.2d at 58. The *Mendoza* court concluded that a defendant whose trial was "unreasonably delayed" had alternative remedies available under the pre-*Hinson* case of *Oshrin v. Coulter,* 142 Ariz. 109, 688 P.2d 1001 (1984): (1) the state's evidence could be suppressed if the state's procedure resulted in "a denial of fundamental fairness shocking to a sense of justice and a denial of due process," or (2) "if the delay between arrest and trial is so egregiously long that it violates due process, the DUI prosecution

---

3. At oral argument, the state contended that the card Officer Bradshaw left at defendant's residence contained a message indicating, "There is a summons for a criminal complaint." We find no support for this in the record.

4. The *Mendoza* holding was retroactively applied to all cases pending and not yet final when it was decided on January 7, 1992, which includes defendant's case. *See* 170 Ariz. at 192, 823 P.2d at 59.

against the defendant will be dismissed." *Mendoza,* 170 Ariz. at 191–92, 823 P.2d at 58–59. Dismissal with prejudice is mandated if the defendant shows prejudice from the delay. *Id.,* citing *State v. Hannah,* 118 Ariz. 610, 611, 578 P.2d 1039, 1040 (App.1978).

In determining under *Mendoza* and *Oshrin* whether any due process prejudice has resulted in this case, we find instructive a recent decision of the United States Supreme Court in the analogous area of a criminal defendant's sixth amendment rights to a speedy trial under the United States Constitution.[5] *See Doggett v. United States,* — U.S. —, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). In *Doggett,* the Court recognized that four separate inquiries are required in determining when a speedy trial violation occurs:

(1) whether delay before trial was uncommonly long;

(2) whether the government or the criminal defendant is more to blame for that delay;

(3) whether, in due course, the defendant asserted his right to a speedy trial; and

(4) whether he suffered prejudice as the delay's result.

*Id.* at —, 112 S.Ct. at 2690, *citing Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972). The first prong is a "trigger"; a defendant must assert that the delay between indictment and trial is "presumptively prejudicial." *Doggett,* — U.S. at —, 112 S.Ct. at 2690. The Court noted that lower courts have found delay "presumptively prejudicial" as it approaches one year. *Id.* at — n. 1, 112 S.Ct. at 2691 n. 1. The presumption that delay in prosecution has prejudiced a defendant "intensifies

over time." *Id.* at —, 112 S.Ct. at 2691. The Court reasoned:

[W]e generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria ... it is part of the mix of relevant facts, and its importance increases with the length of delay.

*Id.* at —, 112 S.Ct. at 2693. The Court concluded that the government's delay in prosecuting Doggett for eight and a half years was due to six years of the prosecution's "negligent" and "inexcusable" oversights in attempting to locate him. Thus, Doggett had shown adequate prejudice by the passage of time to be entitled to relief from prosecution. *Id.* at —, 112 S.Ct. at 2694.

■ We believe that this concept of "presumptive prejudice" has been adequately established by the facts of this case to entitle defendant to dismissal of the indictment with prejudice under the due process concepts of *Oshrin, Mendoza,* and Rule 8.6.[6] It would be fundamentally unfair to allow the state to proceed with this DUI prosecution after a delay of more than five years when that delay is directly attributable to the state's failure to exercise due diligence to locate defendant, during which time the availability of evidence,[7] witnesses, and recollection has faded.

### CONCLUSION

We hold that it was an abuse of discretion for the trial court to deny defendant's motion

---

**5.** The sixth amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial...." U.S. Const., amend VI. The sixth amendment right to a speedy trial is "fundamental" and is imposed on the states by the due process clause of the fourteenth amendment. *Barker v. Wingo,* 407 U.S. 514, 515, 92 S.Ct. 2182, 2184, 33 L.Ed.2d 101 (1972). The constitutional right to speedy trial has no quantification of "a specified number of days or months"; rather, "[t]he ... States ... are free to prescribe a reasonable period consistent with constitutional standards...." *Id.* at

523, 92 S.Ct. at 2188. We believe Rule 8 prescribes such a reasonable period.

**6.** In so holding, we express no opinion as to whether defendant's constitutional rights to a speedy trial were violated under either the United States or Arizona Constitutions. We find the Rule 8 violation sufficiently prejudicial under this analysis to be dispositive in this case.

**7.** It also appears that during this five year interval the second breath sample provided to defendant was misplaced.

to dismiss the indictment. No reasonable evidence exists on this record to justify the state's delay of five years in bringing this defendant to trial. The trial court's order denying defendant's motion to dismiss is vacated, and this matter is remanded to the superior court with directions to dismiss the indictment with prejudice.

Jurisdiction accepted; relief granted.

LANKFORD and CONTRERAS, JJ., concur.