903 P.2d 628

**Kyle Douglas SNOW, Petitioner,**

v.

**SUPERIOR COURT of the State of Arizona, in and for the COUNTY OF MARICOPA, the Honorable Barbara M. Jarrett, a judge thereof, Respondent Judge,**

**Richard ROMLEY, State of Arizona, ex rel. The Maricopa County Attorney's Office, Real Party in Interest.**

No. 1 CA–SA 95–0102.

Court of Appeals of Arizona, Division 1, Department D.

June 6, 1995.

Reconsideration Denied July 5, 1995.

Review Denied Sept. 26, 1995.*

* Corcoran, J., of the Supreme Court, did not participate in the determination of this matter.

Richard Romley, Maricopa County Atty. by Arthur Hazelton, Deputy County Atty., Phoenix, for real party in interest.

Law Office of Mark N. Weingart by Martin G. McAuliffe, Tempe, for petitioner.

**322**

## OPINION

VOSS, Judge.

Petitioner Kyle Douglas Snow filed a petition for special action alleging violations of his right to a speedy trial and the constitutional prohibition against double jeopardy. By order we previously accepted jurisdiction with an opinion to follow. This is that opinion.

## FACTS AND PROCEDURAL HISTORY

In June 1992, Petitioner was placed on probation for solicitation to sell narcotic drugs. Several months later, he secured employment on a fishing boat in the Bering Sea. Petitioner requested permission from his probation officer to live in Seattle, Washington, where he would work at sea thirty to forty-five days at a time. The probation department granted this request and Petitioner was preparing to leave Arizona in January 1993.

In December 1992, Petitioner was stopped on suspicion that he was driving under the influence. After he failed duplicate breath tests, his driver's license was suspended for ninety days and he was arrested for aggravated driving under the influence. When Petitioner was released from jail, he followed the instructions on his ticket and contacted the justice court. He learned that the charge had been scratched and that he did not need to appear in court. Shortly thereafter, Petitioner moved to Seattle.

On February 16, 1993, Petitioner was indicted for aggravated driving under the influence. A summons was delivered by certified mail to the address he listed as his residence in the questionnaire he filled out at the time of his arrest. A Hazel Knopek, who Petitioner named in the same questionnaire as his nearest relative/friend, signed the return receipt. Nevertheless, he failed to appear for his arraignment on March 3, 1993, and a bench warrant was issued.

At some time, Petitioner had given his forwarding address to the United States Post Office. In addition, he remained in constant contact with his probation officer while in Seattle.

In May 1994, the probation officer learned from a records check that Petitioner had been indicted for aggravated driving under the influence in February 1993. The probation officer notified Petitioner about this charge and Petitioner, after contacting a public defender, returned to Arizona, surrendered to authorities, and was arraigned on July 8, 1994.

Petitioner moved to dismiss the complaint against him, arguing: (1) That his right to a speedy trial was violated; and (2) that pursuant to *Department of Revenue of Montana v. Kurth Ranch,* —— U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), the constitutional protection against double jeopardy prohibited criminal prosecution for aggravated driving under the influence because his driver's license already had been suspended for the December 1992 incident. After the trial court denied the motion, Petitioner filed the present special action raising the same arguments.

## JURISDICTION

■ Generally, this court does not accept special action review of a denial of a motion to dismiss. *Humble v. Superior Court,* 179 Ariz. 409, 411, 880 P.2d 629, 631 (App.1993). Special action review has been granted, however, where a party raises an issue of first impression which is a matter of statewide importance that is likely to recur and which, in fact, has recurred in subsequent cases. *State ex rel. Bowers v. Superior Court,* 173 Ariz. 34, 38, 839 P.2d 454, 458 (App.1992). We therefore accepted jurisdiction.

## DISCUSSION

*A. Speedy Trial.*

When considering Petitioner's motion to dismiss, the trial court stated that Rule 8.4(a), Arizona Rules of Criminal Procedure ("Rule 8.4(a)"), did not require the state to exercise due diligence to locate Petitioner because he was out of Arizona. The court therefore denied Petitioner's motion, concluding that the period Petitioner was out of Arizona was automatically excluded time.

Petitioner first asserts that the state must exercise due diligence to locate a defendant, even when such defendant is out of Arizona. He then argues that because the state failed to exercise due diligence in the present case, the time he was out of Arizona is not excluded time. Accordingly, Petitioner concludes that his right to a speedy trial pursuant to Rule 8.2(a), Arizona Rules of Criminal Procedure ("Rule 8.2(a)"), was violated, thereby entitling him to dismissal with prejudice.

Although we agree with Petitioner that his right to a speedy trial was violated pursuant to Rule 8.2(a), we disagree that the appropriate remedy pursuant to Rule 8.6, Arizona Rules of Criminal Procedure ("Rule 8.6"), is dismissal with prejudice.

### 1. Violation of Petitioner's Right To A Speedy Trial.

Rule 8.2(a) provides:

Every person against whom an indictment, information or complaint is filed shall be tried by the court having jurisdiction of the offense within 150 days of the arrest or service or summons under Rule 3.1 except for those excluded periods set forth in Rule 8.4 below.

Rule 8.4(a) provides:

The following periods shall be excluded from the computation of the time limits set forth in Rules 8.2 and 8.3: ... [d]elays occasioned by or on behalf of the defendant, including, but not limited to, delays caused by ... the defendant's absence or incompetence, or his or her inability to be arrested or taken into custody in Arizona.

To resolve whether time was properly excluded pursuant to Rule 8.4(a) in the present case, we first must examine whether the state is required to exercise due diligence when a defendant is out of Arizona.

### a. Is The State Required To Exercise Due Diligence When A Defendant Is Out Of Arizona?

■ In the present case, the trial court noted that it was not necessary for the state

to exercise due diligence because Petitioner was out of Arizona. Petitioner argues that the court's premise is erroneous and we agree.

In *Duron v. Fleischman*, 156 Ariz. 189, 192, 751 P.2d 39, 42 (App.1988), Division Two of this court established that the state must exercise due diligence to locate a defendant when delay is caused by such defendant's "inability to be arrested or taken into custody in Arizona." Citing *Duron*, courts have conducted a due diligence inquiry in cases where the defendants were in Arizona but were unable to be arrested or taken into custody. *See Humble*, 179 Ariz at 412, 880 P.2d at 632; *State v. Armstrong*, 160 Ariz. 159, 160, 771 P.2d 889, 890 (App.1989); *State v. Snow*, 157 Ariz. 597, 598, 760 P.2d 597, 598 (App.1988).

An exception to the general requirement that the state exercise due diligence was established in *State v. Miller,* 161 Ariz. 468, 778 P.2d 1364 (App.1989). There, the defendant "voluntarily absconded from the jurisdiction knowing that a trial was pending [and scheduled] in justice court...." *Id.* at 470, 778 P.2d at 1366. Division Two of this court distinguished *Duron* and refused to examine whether the state exercised due diligence because the defendant "cannot be heard to complain that the state did not act more expeditiously to find him." *Id.*

Here, we are asked to reconcile *Duron* and *Miller* and determine whether the state must exercise due diligence to locate a defendant who is outside of Arizona, but who is not attempting to avoid apprehension or prosecution. The state urges us to accept its interpretation of these cases—namely that it must exercise due diligence only when a defendant is in Arizona. We reject this interpretation for two reasons.

■ First, the American Bar Association ("ABA") standard upon which Rule 8.4(a) was patterned envisions a due diligence inquiry, either expressly or by implication, except when a defendant is attempting to avoid apprehension or prosecution.[1] Second, as a

---

1. Rule 8.4(a) was patterned after the ABA standard relating to speedy trial. *Duron*, 156 Ariz. at 192, 751 P.2d at 42; *State v. Tarkington*, 157

Ariz. 556, 559, 760 P.2d 556, 559 (App.1988). The ABA standard provides that "[t]he following periods should be excluded in computing the

policy matter, we do not believe that the state's failure to exercise due diligence should be excused by the mere fortuity of a defendant's innocent absence from Arizona. Although overlooking the state's failure to exercise due diligence is sound policy when a defendant attempts to avoid apprehension or prosecution, the same cannot be said when a defendant is innocently out of state and cannot be arrested or taken into custody.

■ We therefore hold that for time to be excluded pursuant to Rule 8.4(a) because of a defendant's absence from Arizona, the state must show either that it has exercised due diligence to locate the defendant or that the defendant has attempted to avoid apprehension or prosecution.

In the present case, Petitioner left Arizona to take a job that he had secured months earlier. At the time, he thought the charges against him had been scratched. The state presented no evidence that Petitioner left Arizona to avoid apprehension or prosecution, and we have found none. Accordingly, to exclude time pursuant to Rule 8.4(a), the state must have exercised due diligence to locate Petitioner.

### b. Did The State Exercise Due Diligence To Locate Petitioner?

Due diligence has been described as follows:

time for trial: ... the period of delay resulting from the absence or unavailability of the defendant." *Standards for Criminal Justice*, Standard 12–2.3(e) (2d ed. 1980 & Supp.1986). "Absence" has been defined as instances when a defendant's "whereabouts are unknown and in addition the defendant is attempting to avoid apprehension or prosecution or his or her whereabouts cannot be determined by due diligence." *Id.* "Unavailability" has been defined as instances when a defendant's "whereabouts are known but his or her presence for trial cannot be obtained or whenever [a] defendant resists being returned to the state for trial...." *Id.* Although the ABA standard establishes a due diligence inquiry for a defendant's absence, Division Two of this court has held that a defendant's unavailability—phrased in Rule 8.4(a) as the "inability to be arrested or taken into custody in Arizona"—implies that the state will exercise due diligence. *Duron,* 156 Ariz. at 192, 751 P.2d at 42.

**2.** Knopek's return of the receipt is not prima facie evidence of service.

Rule 3.4, Arizona Rules of Criminal Procedure ("Rule 3.4"), provides: "The summons may be

Although the question of due diligence necessarily turns upon the details of each case, the standard is constant: whether the state took reasonable steps to locate the accused based upon all of the information that it possessed. Characteristic of cases of inadequate diligence is the state's failure to pursue significant leads.

*Humble,* 179 Ariz. at 413, 880 P.2d at 633 (quoting *Armstrong,* 160 Ariz. at 160, 771 P.2d at 890).

■ Here, the state contends that the trial court correctly excluded time pursuant to Rule 8.4(a) because there was prima facie evidence that Petitioner was served with the summons. This argument has two flaws. First, Petitioner was not properly served with the summons by mail.[2] Second, we recognize that "[t]he fact that the state has chosen a permissible means of attempting to serve a defendant does not necessarily mean that the state has exercised due diligence in ascertaining his whereabouts." *Duron,* 156 Ariz. at 192, 751 P.2d at 42. We therefore focus our inquiry on the state's efforts to locate Petitioner to determine whether it exercised due diligence.

Although the state did attempt to serve Petitioner with the summons by certified

served in the same manner as the summons in a civil action, except that service may not be by publication.... [A] summons may be served by certified or registered mail, return receipt requested. Return of the receipt shall be prima facie evidence of service." We believe that the return of the receipt is prima facie evidence of service only when the receipt is signed by the party being served.

This conclusion comports with the Arizona Rules of Civil Procedure, to which Rule 3.4 refers. The rule governing service by certified or registered mail in a civil action envisions that the party being served receive service and sign the receipt. *See* Rule 4.2(c), Arizona Rules of Civil Procedure ("Upon return through the post office of the signed receipt, the serving party shall file an affidavit with the court stating ... (3) that such papers were in fact received by the party [being served] as evidenced by the receipt, a copy of which shall be attached to the affidavit....").

Because Knopek, not Petitioner, signed and returned the receipt here, service of the summons was incomplete.

mail, there is no evidence that it pursued any other available leads. Significantly, we find nothing in the record indicating any attempt to interview Knopek. Considering that she was named by Petitioner as his nearest relative/friend, that she received mail at the address that Petitioner listed as his residence, and that she signed the return receipt for the certified mail, it certainly would have been reasonable for the state to contact her after Petitioner failed to appear. In addition, there is no evidence that the state contacted the United States Post Office to determine whether it had a forwarding address for Petitioner. Finally, the record reveals no attempt to investigate Petitioner's criminal record. Had the state done so, it likely would have discovered evidence of Petitioner's June 1992 drug conviction and probationary status. The state then could have contacted Petitioner's probation officer—a person who remained in constant contact with Petitioner—and determined his whereabouts.

We therefore conclude that the state failed to exercise due diligence in its efforts to locate Petitioner. Moreover, there is no evidence that Petitioner deliberately "attempted to avoid service in a way that would entitle the state to exclusion of time under Rule 8.4(a)." *Humble,* 179 Ariz. at 415, 880 P.2d at 635. Accordingly, because time was not excluded pursuant to Rule 8.4(a), Petitioner's right to a speedy trial pursuant to Rule 8.2(a) was violated.

### 2. *Remedy For Violation Of Right To A Speedy Trial.*

We now consider the appropriate remedy for the violation of Petitioner's right to a speedy trial. Rule 8.6 provides: "If the court determines ... that a time limit established by Rule[ ] 8.2(a) ... has been violated, it shall on motion of the defendant, or on its own initiative, dismiss the prosecution with or without prejudice."

In *Humble,* this court determined the appropriate remedy pursuant to Rule 8.6 by applying the "instructive" analysis of the

United States Supreme Court in *Doggett v. United States,* 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992)—a case addressing the "analogous area of a criminal defendant's sixth amendment rights to a speedy trial...." 179 Ariz. at 416, 880 P.2d at 636. The four separate inquiries of the *Doggett* analysis are: (1) Whether the delay before trial was uncommonly long; (2) whether the government or the defendant was more to blame for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether the defendant suffered prejudice as a result of the delay. 505 U.S. at 650, 112 S.Ct. at 2690. Although the Court noted that delay became "presumptively prejudicial" as it approached one year, *Id.* at 652, 112 S.Ct. at 2691 n. 1., it also recognized that the weight assigned to such prejudice "compounds over time." *Id.* at 657, 112 S.Ct. at 2693. Finally, it reiterated the importance of presumptive prejudice in speedy trial claims by stating that "[w]hile such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other ... criteria, it is part of the mix of relevant facts, and its importance increases with the length of delay." *Id.* (citations omitted).

Applying these four factors, we first note that the delay of approximately nineteen months here is presumptively prejudicial pursuant to *Doggett.* Second, the reason for the delay was the state's failure to exercise due diligence in locating Petitioner. Third, Petitioner promptly asserted his right to a speedy trial in July 1994. Finally, the only prejudice from the delay that Petitioner identifies is inconvenience—the inability to resolve the matter while he was still on probation and his unavailability for employment during the fishing season. Petitioner offers no suggestion that his defense has been impaired, nor does he contend that the delay subjected him to oppressive pretrial incarceration, anxiety, or concern. *See Id.* at 654, 112 S.Ct. at 2692. In sum, Petitioner has not identified any actual prejudice, and we have found none.[3]

**3.** We also note that Petitioner is no stranger to this process. *See State v. Snow,* 157 Ariz. 597, 760 P.2d 597 (App.1988) (Driving while intoxicated charges against Petitioner were dismissed

with prejudice because his Rule 8 speedy trial rights were violated.). Although dismissal with prejudice was proper in Petitioner's prior case because of the strict construction of the 150 day

Our analysis of these four factors demonstrates that the present case is distinguishable from *Doggett* and *Humble.* In *Doggett,* the charge against the defendant was dismissed with prejudice—despite the fact that there was no evidence that he was actually prejudiced—because there was extraordinary presumptive prejudice created by the 8.5 year delay, six years of which was caused by the state's negligence. *Id.* at 657, 112 S.Ct. at 2694. Likewise in *Humble,* the charge against the defendant was dismissed with prejudice, in part because of the actual prejudice suffered by the loss of a breath sample provided to him, and in part because the five year delay in prosecution resulting from the state's failure to exercise due diligence "adequately established" presumptive prejudice. 179 Ariz. at 416 & n. 7, 880 P.2d at 636 & n. 7. Here, however, the presumptive prejudice pales in comparison to that in *Doggett* or *Humble* because the delay was far shorter. Without any evidence of actual prejudice whatsoever, the presumed prejudice arising from the nineteen month delay alone is insufficient to warrant dismissal with prejudice. *United States v. Beamon,* 992 F.2d 1009, 1013–15 (9th Cir.1993) ("tenuous" showing of actual prejudice, considered with presumptive prejudice arising from seventeen and twenty month delays caused by government's negligence, did not entitle defendants to relief in constitutional speedy trial challenge).

Accordingly, we conclude that dismissal without prejudice is the appropriate remedy pursuant to Rule 8.6.[4]

### B. Double Jeopardy.

■ Petitioner contends that the trial court abused its discretion by refusing to dismiss the complaint against him on double jeopardy grounds. He argues that pursuant to *Kurth Ranch,* the Fifth Amendment's protection against double jeopardy prohibits the criminal prosecution against him for aggravated driving under the influence in December 1992 because his driver's license already was suspended for the same incident. We disagree.

In *Kurth Ranch,* the Court resolved whether a tax may be characterized as punishment for double jeopardy purposes. —— U.S. at ——, 114 S.Ct. at 1945. Citing *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), the majority opinion noted that "[a] defendant convicted and punished for an offense may not have a nonremedial civil penalty imposed against him for the same offense in a separate proceeding." —— U.S. at ——, 114 S.Ct. at 1945. It then commented that "tax statutes serve a purpose quite different from civil penalties, and *Halper*'s method of determining whether exaction was remedial or punitive 'simply does not work in the case of a tax statute.'" *Id.* at ——, 114 S.Ct. at 1948 (quoting *Id.* at ——, 114 S.Ct. at 1950 (Rehnquist, C.J., dissenting)). In addition, the majority opinion recognized that the statute at issue in *Kurth Ranch* "[did] not raise the question whether an ostensibly civil proceeding that is designed to inflict punishment may bar a subsequent proceeding that is admittedly criminal in character." *Id.* at ——, 114 S.Ct. at 1947 n. 21. We therefore believe that *Kurth Ranch* only affects the *Halper* double jeopardy analysis for tax statutes; for all other civil penalties, the *Halper* test apparently remains unchanged.

The present case is not a tax case. Moreover, Division Two of this court already has applied the *Halper* test and held that, for double jeopardy purposes, license suspension proceedings are not a prosecution and an automatic license suspension is primarily remedial, not punitive. *State v. Nichols,* 169 Ariz 409, 410–14, 819 P.2d 995, 996–1000 (App.1991). In sum, the constitutional prohibition against double jeopardy is not violated by prosecuting a defendant for driving under the influence, even though his or her license

---

time limit in driving under the influence cases pursuant to *Hinson v. Coulter,* 150 Ariz. 306, 723 P.2d 655 (1986), such is not the case here because *Hinson* has been overruled by *State v. Mendoza,* 170 Ariz. 184, 823 P.2d 51 (1992).

4. We recognize that our decision also is consistent with Rule 16.6(d), Arizona Rules of Criminal Procedure ("Dismissal of a prosecution shall be without prejudice to commencement of another prosecution, unless the court order finds that the interests of justice require that the dismissal be with prejudice.").

already has been suspended as a result of the same incident. *Id.* at 414, 819 P.2d at 1000.

Because *Nichols* is unaffected by *Kurth Ranch,* and because Petitioner's double jeopardy argument was rejected in *Nichols,* the trial court correctly denied Petitioner's motion to dismiss in this regard.

## CONCLUSION

The violation of Petitioner's speedy trial rights pursuant to Rule 8.2(a) must be remedied by a dismissal of the present complaint without prejudice. The order denying Petitioner's motion to dismiss is vacated, and this matter is remanded to the trial court with instructions to dismiss the indictment without prejudice.

NOYES, P.J., and GRANT, J., concur.