NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

DEQUINT MATTHEW BLUNT, *Appellant.*

No. 1 CA-CR 21-0562
FILED 3-9-2023

Appeal from the Superior Court in Coconino County
No. S0300CR201400836
The Honorable Cathleen Brown Nichols, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Kevin M. Morrow
*Counsel for Appellee*

Harris & Winger PC, Flagstaff
By Chad Joshua Winger
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Randall M. Howe delivered the decision of the court, in which Presiding Judge David D. Weinzweig and Judge D. Steven Williams joined.

---

**H O W E**, Judge:

¶1        Dequint Matthew Blunt appeals his convictions and sentences for armed robbery, kidnapping, first-degree burglary, attempted armed robbery, and aggravated assault. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        In June 2014, Blunt and his accomplice, Porter Land, traveled to Coconino County to rob a jewelry store. To avoid leaving a paper trail, they traveled in cars rented by other associates, and stayed in multiple hotels. Land's ex-wife, Monica Miller, would later admit that she saw Blunt with a gun before they left for Coconino County.

¶3        Upon their arrival, Land and Miller "cased" the jewelry store under the guise of buying a ring guard. The next day, Blunt and Land arrived at the jewelry store in one of the rental cars. Blunt was wearing a hat and plaid shirt, and Land was wearing a hooded sweatshirt. Blunt entered the jewelry store and spoke with the owner, Molly.[1] When Molly answered a phone call, Blunt pointed a gun at her head and demanded the location of the safe. Molly fought with Blunt to push him out of the store. Molly fell to the ground and Blunt jumped on her back. Molly pleaded with Blunt that she had children at home. Blunt pressed the gun to her head and told her that she needed to reveal the location of the safe if she wanted to see her children again.

¶4        While Blunt still had Molly pinned to the ground, a customer, Mark, entered the jewelry store. Molly shouted for Mark to run and call 9-1-1, warning that Blunt would kill him. Blunt chased after Mark as he ran from the store, leaving his hat behind. Blunt and Land caught Mark in the parking lot and, after a brief scuffle, ripped his phone from his pocket. In the chaos, Land left a duffle bag containing a hammer in the parking lot.

---

[1]        We use pseudonyms to protect the victims' privacy.

¶5	With Blunt distracted, Molly hit the alarm and retrieved a gun from her office. Land reentered the jewelry store and smashed a glass case containing engagement rings. As Land grabbed items from the case, Molly shot her gun above his head. Land dropped the jewelry, jumped through a window, and ran away. Blunt and Land fled in the rental car, ultimately abandoning it and leaving Coconino County. Blunt discarded his plaid shirt in a garbage bin near the abandoned car, and Land left his sweatshirt on the roadway near the jewelry store.

¶6	When investigators processed the crime scene, they seized several items, including the hat, plaid shirt, hammer, and sweatshirt. Forensic analysts matched DNA samples from the plaid shirt to Blunt's DNA profile, and samples from the hammer and sweatshirt to Land's DNA profile. Analysts could not conclusively match samples from the hat to either Blunt or Land, meaning they were "not able to draw any conclusions about whose DNA could be there or not." Investigators located surveillance video footage linking Blunt and Land to the offenses, as well as witness accounts and documentation linking them to the hotels and rental cars. Miller, who eventually pled guilty to facilitating the offenses, provided further information showing Blunt and Land worked together in executing the robbery.

¶7	After committing the offenses in the current case, Blunt committed a string of armed robberies in Maricopa County between July and September 2014. In October 2014, the State charged Blunt in the current case with armed robbery, a class 2 felony; kidnapping, a class 2 felony; first-degree burglary, a class 3 felony; attempted armed robbery, a class 3 felony; and two counts of aggravated assault, class 3 felonies; all constituting dangerous offenses.[2] The trial court issued a warrant for Blunt's arrest and sent a copy of the indictment to Blunt's last known address. Days later, Blunt was arrested for warrants in both the current case and his Maricopa County cases.

¶8	In December 2018, while still in custody for his Maricopa County cases, Blunt requested that the trial court in the current case accept his written appearance in place of an in-person appearance. The trial court denied the motion, noting that Blunt was awaiting trial in multiple Maricopa County cases, and that he would be transported to Coconino County upon their resolution. At the end of October 2019, Blunt was convicted and sentenced in the Maricopa County cases. Shortly after, the

---

[2]	The trial court granted the State's motion to dismiss an additional count of criminal damage, a class 1 misdemeanor, during trial.

court granted the State's motion to transport Blunt to Coconino County, and he was arraigned in the current case in December 2019. Blunt elected to represent himself until the second day of trial, when advisory counsel assumed full representation of his defense. In March 2020, Blunt moved to dismiss the current case, claiming the delay in transporting him to Coconino County violated his speedy trial rights. The State countered that Blunt faced serious charges in Maricopa County, he was transported immediately upon sentencing, and he failed to show actual prejudice resulted from the delay. The court denied the motion.[3]

¶9        In April 2021, the State disclosed a supplemental forensic report showing that further DNA testing of samples from the hat had been inconclusive. With the July 2021 trial date approaching, Blunt moved to release samples from the hat for independent DNA testing. He claimed that the State did not disclose the report until July 2021, and he made an oral motion to continue. The State avowed that, according to email and disclosure logs, the report was disclosed in April 2021 and downloaded by someone in the advisory counsel's office in May 2021. Advisory counsel confirmed that his office received the report on that date. Although the trial court granted Blunt's motion to release samples from the hat, it denied any continuance of the trial date because Blunt delayed filing the motion. At trial, forensic analysts testified that they tested samples from the hat in October 2014 and again in April 2021 using "new test kits" that could give analysts "more of a profile." Analysts confirmed that the results were inconclusive in both tests. The results of the initial DNA testing had long been disclosed by the time of trial.

¶10        After a seven-day trial, the jury found Blunt guilty on all counts. At sentencing, the trial court found that Blunt had nine prior felony convictions for armed robberies committed between July and September 2014, and one conviction for kidnapping committed in January 2014. The State asked the court to consider multiple aggravating factors, arguing the current case was just one in a string of serious offenses Blunt committed in 2014. The State noted that, although Blunt was not the "ringleader," he was the person who entered the jewelry store with a gun. Molly provided a victim impact statement and detailed the significant harm the offenses had caused her. Blunt asked the court to consider portions of the presentence

---

[3]        Blunt did not include a transcript of the trial court's findings on the motion to dismiss in the record on appeal. Any missing portion of the record is presumed to support the decision of the court. *State v. Zuck*, 134 Ariz. 509, 512–13 (1982).

report as mitigation, including information that he had untreated mental health issues, was homeless, and lacked a criminal history before 2014. As aggravating factors, the court found that the offenses involved the threatened infliction of serious physical injury, the presence of an accomplice, the harm multiple victims had suffered, and pecuniary gain. The court then stated that it considered Blunt's youth and mental health issues to be mitigating factors. The court acknowledged that it had considered information in the presentence report.

¶11 After weighing the aggravating and mitigating factors, the trial court sentenced Blunt to maximum terms of 28 years' imprisonment for armed robbery and kidnapping, to be served concurrently with maximum terms of 20 years' imprisonment for the remaining offenses.[4] Blunt timely appealed.

## DISCUSSION

### I. Denial of Motion to Dismiss.

¶12 Blunt argues that the trial court abused its discretion by denying his motion to dismiss for a violation of his right to a speedy trial under Arizona Rule of Criminal Procedure ("Rule") 8. *See generally* Ariz. R. Crim. P. 8.2. He claims the State's five-year delay in pursuing an indictment was presumptively prejudicial and required dismissal. We review the trial court's denial of a motion to dismiss based on a Rule 8 speedy trial violation for an abuse of discretion and resulting prejudice. *State v. Spreitz*, 190 Ariz. 129, 136 (1997).

¶13 A dismissal for a Rule 8 speedy trial violation is required when a defendant's Sixth Amendment rights have been violated. *Humble v. Superior Ct. In & For Cnty. of Maricopa*, 179 Ariz. 409, 416 (App. 1993). In making this determination, courts must look to (1) the length of the delay; (2) the reason for the delay; (3) defendant's assertion of the right to speedy trial; and (4) the prejudice to the defendant. *See Barker v. Wingo*, 407 U.S. 514, 529–32 (1972); *see also Doggett v. United States*, 505 U.S. 647, 650 (1992). Although a delay can become presumptively prejudicial as it approaches one year, triggering further inquiry into the other three factors, and can compound over time, presumptive prejudice alone does not require dismissal. *Snow v. Superior Ct. in & for Cnty. of Maricopa*, 183 Ariz. 320, 325

---

[4] Although the jury convicted Blunt of dangerous offenses, the State elected to prove Blunt's prior felony convictions and proceed under the category three repetitive offender sentencing range. *See* A.R.S. § 13–703(J).

(App. 1995) (citing *Doggett*, 505 U.S. at 652, 657). Accordingly, the "length of delay is the least important, while the prejudice to Defendant is the most significant." *Spreitz*, 190 Ariz. at 139–40.

**¶14**　　The trial court did not abuse its discretion in denying the motion to dismiss. Although the five-year delay was presumptively prejudicial, the delay was not caused by the State acting in bad faith. The delay here resulted from Blunt's multiple pending cases in Maricopa County. We weigh a "more neutral reason," such as an unresolved case in another county, less heavily against the State. *McCutcheon v. Superior Ct.*, 150 Ariz. 312, 316 (1986) (quoting *Barker*, 407 U.S. at 531). In addition, the delay did not result in actual prejudice. To establish prejudice, Blunt must show that he was subject to pretrial incarceration, suffered anxiety or concern because of the delay, or had his defense impaired. *Barker*, 407 U.S. at 532. Blunt has failed to make such a showing. He was incarcerated awaiting trial in multiple Maricopa County cases for the five years leading up to the current case and he was transported immediately upon sentencing. Blunt was not incarcerated in the current case, the delay did not cause him anxiety or concern, and the delay did not hinder his defense. Thus, Blunt has shown no error.

## II.　　Denial of Motion to Continue.

**¶15**　　Blunt contends that the trial court abused its discretion by denying his motion to continue trial based on an alleged disclosure violation. He claims the trial court should have continued trial to allow for independent DNA testing of the hat. We review the trial court's denial of a motion to continue for an abuse of discretion and resulting prejudice. *State v. Forde*, 233 Ariz. 543, 555 ¶ 18 (2014). In making this determination, we consider all the facts and circumstances of the case. *State v. Barreras*, 181 Ariz. 516, 520 (1995). We review the court's ruling on an alleged disclosure violation for an abuse of discretion. *State v. Jessen*, 130 Ariz. 1, 4 (1981).

**¶16**　　The trial court "may continue trial only on a showing that extraordinary circumstances exist and that delay is indispensable to the interests of justice." Ariz. R. Crim. P. 8.5(b). A continuance may be appropriate to remedy a disclosure violation "if necessary in the interests of justice." Ariz. R. Crim. P. 15.7(c)(3). No violation occurs if the State meets its continuing duty to disclose new information, and all disclosure is complete at least seven days before trial. Ariz. R. Crim. P. 15.6(a), (c). A continuance is not required if the need for an independent investigation of newly disclosed information is too speculative, *Forde*, 233 Ariz. at 555 ¶ 21,

and the defendant had sufficient time to prepare a defense, *State v. Cramer*, 174 Ariz. 522, 525 (App. 1992).

**¶17**        Testimony at trial revealed that forensic analysts tested samples of the hat twice, both tests yielding inconclusive results. Blunt had the initial results at the time of his arraignment, and the follow-up results months before trial. The State did not violate any disclosure rules, *see* Ariz. R. Crim. P. 15.1, 15.6, and Blunt had sufficient time to prepare his defense, *Cramer*, 174 Ariz. at 525. Blunt moved to release samples for DNA testing within weeks of trial and failed to articulate how independent testing would uncover new evidence. With the initial and follow-up testing yielding the same results, Blunt's request for further testing was speculative at best and a delay tactic at worst. The trial court acted within its discretion in declining to continue the trial date.

### III.    Sentencing Error.

**¶18**        Blunt argues that the trial court erred by disregarding mitigating factors. Specifically, he claims the court failed to adequately consider evidence that he was not the mastermind behind the offenses, he suffered untreated mental-health issues, was homeless, and had no criminal history before 2014. We afford the trial court broad discretion in weighing aggravating and mitigating factors to determine the appropriate sentence. *State v. Ross*, 166 Ariz. 579, 582 (App. 1990). We will not disturb a sentence that falls within the statutory limits unless the court has acted in an arbitrary or capricious manner. *State v. Fillmore*, 187 Ariz. 174, 184 (App. 1996).

**¶19**        The trial court properly evaluated various mitigating and aggravating factors in imposing sentences within the statutory limits. *See* A.R.S. § 13–703(G) (allowing an aggravated sentence if at least two aggravating factors apply). The court considered statutorily provided aggravating factors, including threatened infliction of serious physical injury, presence of an accomplice, pecuniary gain, and victim harm. A.R.S. § 13–701(D)(1), (4), (6), (9). The court was also required to consider the victim's opinion in making its sentencing determination. A.R.S. § 13–701(G). For mitigation, the court considered the defendant's age and his struggle with mental-health issues. A.R.S. § 13–701(E)(1), (6). Though the court did not list the factors Blunt proffers on appeal, the court noted that it had considered all information contained in the presentence report. The trial court acted within its broad discretion in placing more weight on some factors than others, including the significant harm Blunt caused to multiple victims.

¶20      To the extent that Blunt asks that we find his sentences excessive and reduce the duration of his punishment under A.R.S. § 13–4037(B), this argument similarly fails. This court's "power to revise and reduce sentences imposed by the trial court should be used with great caution and exercised only when it clearly appears that a sentence is too severe." *State v. Linsner*, 105 Ariz. 488, 490 (1970). That is not the case here. Blunt's sentences were amply supported by the facts and circumstances of the case, namely the seriousness of the offenses and victim harm. We see no basis for reducing Blunt's sentences as excessive under A.R.S. § 13–4037(B).

## CONCLUSION

¶21      For the reasons stated, we affirm Blunt's convictions and resulting sentences.



AMY M. WOOD • Clerk of the Court
FILED:    AA